**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Michael HARRIS,
Defendant-Appellant.**

**No. 76–1317.**

United States Court of Appeals,
Ninth Circuit.

Sept. 23, 1976.

Eugene D. Seligmann (argued), of Fishel & Seligmann, Seattle, Wash., for defendant-appellant.

Peter Mair, Asst. U. S. Atty. (argued), Seattle, Wash., for plaintiff-appellee.

Before ELY and CHOY, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

The only issue raised in this appeal is the propriety of the long-standing administrative practice of the Federal Bureau of Investigation (FBI) of routinely destroying rough interview notes taken by agents in the course of a criminal investigation after the information contained in the

---

* Honorable William H. Orrick, United States District Judge, Northern District of California, sitting by designation.

notes is incorporated in a more formal interview report. We reject the contention of the government that the good-faith destruction of rough notes in accordance with normal agency procedure is justifiable. Notes taken by FBI agents in interviews either with prospective government witnesses or, as in this case, with the accused, constitute potentially discoverable materials. *See, United States v. Harrison,* 524 F.2d 421 (1975); *United States v. Johnson,* 521 F.2d 1318 (9th Cir. 1975); *United States v. Lewis,* 167 U.S.App.D.C. 232, 511 F.2d 798 (1975). Since the routine disposal of potentially producible materials by the FBI amounts to a usurpation of the judicial function of determining what evidence must be produced in a criminal case, we hold that such original or rough interview notes must be preserved. However, under the circumstances of this case, we conclude that the destruction of the rough notes of an FBI agent's interview with the appellant herein, John Michael Harris, was harmless error. Accordingly, we AFFIRM the conviction below.

## I.

Appellant was convicted after a jury trial of making a threat by use of the telephone in violation of 18 U.S.C. § 844(e).[1] The facts adduced at trial indicate that a threat to bomb the Federal Building in Seattle, Washington, was made by a male caller at about 1:30 a. m. on September 23, 1975. The call was made to a telephone operator who traced the call to 824–3091. An earlier hostile call had also been placed from the same number to another operator shortly before the bomb threat was received. Appellant resided at the house to which the calls were traced. The testimony of several witnesses placed appellant at the house at the time the threatening calls were allegedly made.[2] Harris took the stand in his own behalf. He stated that he was out drinking on the night in question and returned home intoxicated. He denied making any threatening calls, but he indicated that he did attempt to call his mother upon his return home.

An FBI agent who interviewed Harris on the afternoon of September 23 also testified as to certain statements made by the appellant at the interview about his activities on the night of the telephone calls. None of the statements could be regarded as incriminating. However, the testimony of the agent did contradict the testimony of other witnesses, including appellant, as to the timing of the events in question. The recollections attributed to Harris by the agent also differed from testimony of the appellant and several defense witnesses as to what happened on September 23.[3] The

---

1. 18 U.S.C. § 844(e) provides:
   "Whoever, through the use of the mail, telephone, telegraph, or other instrument of commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of an explosive shall be imprisoned for not more than five years or fined not more than $5,000, or both."

2. These witnesses testified that they spent the evening drinking with Harris at a tavern and that they left the tavern in a car at about 1:15 a. m. They indicated that they drove to Harris' residence so that Harris could pick up some marijuana. The trip took several minutes. Harris entered the residence and remained therein for about ten minutes. He then left the residence, got back in the car, and accompanied his companions while another passenger was dropped off at his residence which was located about ten minutes from the appellant's house. Thereafter, Harris was dropped off at his home again.

3. The government maintained that the threatening telephone calls were placed during the time when Harris was within his house and his companions were waiting outside in the car. This would have been sometime around 1:30 a. m. to 1:40 a. m. Further testimony indicated that Harris was finally dropped off at home before 2:00 a. m. and that he attempted to place a call to his mother at this time.

   According to the testimony of the FBI agent at the trial, the defendant told the agent that he walked home from the tavern where he was drinking at about 2:00 a. m. and that he tried to call his mother at about 2:30 a. m. He admitted being drunk but denied making any threatening calls.

   The testimony of the agent differed from the testimony of other witnesses, including appel-

agent further testified that he took rough notes at the interview with Harris. These notes were incorporated into a more complete report of the interview on the FBI's Interview Report Form FD–302 (302 report) and then discarded pursuant to FBI policy. The 302 report was turned over to the appellant prior to trial.

## II.

The only issue pressed on appeal is whether the destruction of the interview notes made by the FBI agent in an interview with the appellant following the incident in question violates the Jencks Act (18 U.S.C. § 3500) and/or Rule 16 of the Federal Rules of Criminal Procedure. The good faith of the FBI or any of its agents is not challenged herein.[4] Nevertheless, the appellant claims prejudicial error in the failure of the FBI agent to preserve and disclose his rough interview notes notwithstanding the fact that the agent's 302 report was supplied. Appellant contends that the destruction of the rough notes foreclosed any inquiry into possible discrepancies between the original impressions of the

agent and the more studied description of the interview contained in the 302 report and, therefore, limited cross-examination of the agent as to any comments attributed to the appellant by the agent.

At trial, Harris objected to the destruction of the notes, and moved to strike the testimony of the agent on the ground that the government failed to comply with the Jencks Act when it failed to produce the notes made by the FBI agent during the interview with Harris. The motion was denied by the trial court.

The Jencks Act prohibits the pretrial discovery of statements made by prospective government witnesses. If the witness testifies on direct examination at trial, however, the Act requires the government to produce any previously-made statement of the witness in its possession insofar as it relates to the testimony at trial.[5] The Jencks Act, by its terms, narrowly defines "statements" as writings signed or adopted by the witness and accounts which are "a substantially verbatim recital" of a witness' oral statements. 18 U.S.C. § 3500(e).[6]

---

lant, in several respects. First, the agent testified that the defendant left the tavern at about 2:00 a. m., whereas the general consensus of other witnesses was that Harris left the tavern at about 1:15 a. m. Second, according to the agent's testimony, Harris walked home from the tavern. Other witnesses, including Harris himself, indicated that he rode to his house in an automobile, stopped there shortly, got back into the car to drop off another person, and then returned home. Finally, the agent stated that the telephone call Harris placed to his mother was made at about 2:30 a. m., whereas other witnesses testified that this call was placed before 2:00 a. m.

In light of these discrepancies, we are perplexed as to why the government chose to put the FBI agent on the stand at all. The agent's testimony was the only evidence which conflicted with the statements of the other witnesses, including defense witnesses, that Harris was within the house from which the threatening calls were made at about 1:30 a. m., the time when the calls were made.

4. This Circuit recently ruled that the good-faith destruction of handwritten notes prepared by a prospective government witness pursuant to agency policy is not ordinarily an excuse relieving the government from its obligations under

the Jencks Act. *United States v. Carrasco,* No. 75–3223, 537 F.2d 372 (9th Cir. 1976).

5. The Jencks Act, 18 U.S.C. § 3500, provides in pertinent part:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

6. 18 U.S.C. § 3500(e) provides:

"The term 'statement', as used in * * * this section in relation to any witness called by the United States, means—

The issue of whether handwritten or rough interview notes taken by a government agent during a criminal investigation constitute producible Jencks Act "statements" has been extensively litigated. *See, United States v. Harrison, supra,* 524 F.2d at 430–431 n. 25. This Circuit recently reaffirmed the view that notes and reports of government agents made in the course of a criminal investigation may be subject to production under the Jencks Act if the agent testifies at trial. *United States v. Johnson, supra,* 521 F.2d at 1319; *see also, United States v. McSweaney,* 507 F.2d 298 (9th Cir. 1974).

In *Johnson,* the trial court refused to order production of a government agent's handwritten notes of an interview with the defendant at the time of arrest. The agent had testified at trial and the defendant sought the notes the agent had taken at the interview, arguing that the notes constituted a producible statement of the agent himself under the Jencks Act because they had been "adopted or approved" by him. The trial judge ruled that the provision of the agent's case report was enough to satisfy the requirements of the Jencks Act. This Court held that the trial judge erred in refusing to make further inquiry into the producibility of the agent's notes. The Court stated that judicial inquiry into whether the notes constituted producible

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by such witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

7. *Ogden v. United States,* 323 F.2d 818 (9th Cir. 1963), *cert. denied,* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964) (*Ogden II*), followed the decision of this Court in *Ogden v. United States,* 303 F.2d 724 (9th Cir. 1962) (*Ogden I*), wherein the case was remanded to the trial court for a determination of whether certain notes taken by FBI agents during an interview with a government witness were producible statements under the Jencks Act. Upon re-

Jencks Act statements was warranted notwithstanding the agent's testimony that all the information contained in the notes was transferred to the case report. This Court emphasized that the notes would be producible even if it affirmatively appeared that the entire contents of the notes were included in a document which was turned over to the defense. Moreover, it stressed that it is a judicial function to determine the issue of producibility. *United States v. Johnson, supra,* 521 F.2d at 1319–1320.

In light of *Johnson,* we reject the government's contention that this case is controlled by *Ogden v. United States,* 323 F.2d 818 (9th Cir. 1963), *cert. denied,* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964) (*Ogden II*). In that case, the court stated that the destruction of interview notes in accordance with normal administrative practice and for normal administrative purposes unrelated to the suppression of evidence does not justify sanctions, or a new trial, where the same material is made available to the defendant in the form of a signed statement by the witness or an interview report.[7] The Court left open the issue of whether sanctions would be appropriate where the destruction was in bad faith or the information was not preserved in some other form.

We do not believe that *Ogden II* marks a judicial imprimatur on the routine destruc-

mand, the trial judge found that notes were taken by the FBI agents during the interview with the witness, that the witness examined and initialed the notes, and that the FBI prepared a typed statement from the notes, which was later signed by the witness. This typed statement was turned over to the defense at trial and the notes were destroyed. The district court concluded, based on the uncontradicted testimony of the witness and the agents, that the signed statement contained the same information as the notes, and that there were no material changes or omissions in the statement as compared to the notes. On these facts, this Court held in *Ogden II* that the destruction of the interview notes in good faith did not justify the imposition of sanctions where the same material was made available to the defendant in a signed statement or interview report. *Ogden v. United States, supra,* 323 F.2d at 818, 821.

tion of all rough interview notes. In the first place, *Ogden II* focused on the government's obligations to produce Jencks Act statements; it did not consider other independent bases requiring the preservation of evidence in a criminal case. *See, United States v. Harrison, supra,* 524 F.2d at 431. Moreover, it seems obvious that a court cannot perform the inquiry mandated by *Johnson* into whether the notes are producible if the notes are no longer in existence. Since *Johnson* clearly points out that the decision of what evidence must be produced rests with the court, not the prosecutor or the FBI, it compels a holding that the notes must be preserved. *But see, Wilke v. United States,* 422 F.2d 1298 (9th Cir. 1970).

Although the FBI practice of destroying rough interview notes has generally been sanctioned by the courts in cases involving Jencks Act issues, several opinions have been critical of such action. *See, e. g., United States v. Thomas,* 282 F.2d 191, 194 (2d Cir. 1960); *United States v. Johnson,* 337 F.2d 180, 201–202 (4th Cir. 1964), *aff'd,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).[8] Indeed, the danger inherent in permitting the routine destruction of original notes was recently recognized by this Circuit in *United States v. Carrasco,* No. 75–3223, 537 F.2d 372 (9th Cir. 1976). There the Court noted that:

> "It may be that the agent * * * who adapts a final report from preliminary memoranda will tailor his observations to fit his conclusions * * *." *United States v. Carrasco, supra,* at 7.[9]

The shortcomings of the *Ogden II* approach were recently observed in the thorough opinion of the District of Columbia Court of Appeals in *United States v. Harrison, supra.* In *Harrison,* the court refused to follow those cases where the destruction of rough notes had been condoned, commenting on the reasoning of such cases as follows:

> "That reasoning follows a common pattern: the destruction is not grounds for reversal because the court finds that the agent has acted in accordance with normal agency procedures, and that the defendant has made no showing of either bad faith or a failure to transfer to the interview report all the data that appeared in the notes. In nearly every such case, however, the only solid evidence a defendant could offer to show either bad faith or failure to transfer all data would

---

**8.** In *United States v. Johnson,* 337 F.2d 180, 201–202, the court stated:

> "This is not the first time that a court has been called upon to consider the effect of the destruction of FBI interview notes. [citations omitted] Each time the problem has arisen the FBI has claimed that the notes were destroyed as part of FBI routine. This is really not a satisfactory answer. Where the agent testifies to matter he claims not to be in the notes and the defendant insists on a different version, an issue arises which may not be satisfactorily resolved in the absence of the original notes. If the notes were available they might confirm or refute one version or the other. One of the purposes of both the Jencks decision and the Jencks Act is to afford the defense an opportunity to impeach witnesses. *Palermo v. United States,* 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *United States v. Wenzel,* 311 F.2d 164, 171 (4th Cir. 1962). The destruction of interview notes does not advance this purpose. Of course, a district court may find as a fact that the notes were not a substantially verbatim record, or that they were accurately copied into a report and then destroyed in

good faith, but the necessity for inquiries along this line can be avoided by the preservation of notes until after the trial. Eliminating uncertainty may serve the interest of the Government no less than the defendant."

**9.** *United States v. Carrasco,* No. 75–3223, 537 F.2d 372 (9th Cir. 1976), involved the good-faith destruction pursuant to agency policy of the handwritten diary of a key government witness after the information contained therein had been transferred to a government agent's report. Although the agent testified that he believed that his final report included all the substantive material contained in the diary, it developed at trial that omissions had occurred. Recognizing that the purposes of the Jencks Act are not served when a government agent summarizes a witness' statement in his report and then destroys the verbatim statement, this Court held that the failure to produce the original diary required reversal. Although the Court distinguished the situation in which an agent destroys his own rough notes after incorporating their substance into final reports and went on to question the benefits of requiring the preservation of all such rough notes, it did not decide this issue.

come from producing the notes themselves—exactly the course he cannot pursue because of the agency's practice." *United States v. Harrison, supra,* 524 F.2d at 431–432.

In *Harrison,* the court held that the rough notes of FBI interviews of prospective witnesses fall within the category of potentially discoverable materials required to be preserved and possibly produced by the government. This holding reinforced the ruling of *United States v. Bryant,* 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), wherein the court imposed a duty on the government to establish systematic procedures to preserve all discoverable evidence gathered in the course of a criminal investigation. In addition to recognizing that rough notes may constitute Jencks Act statements, the court noted that Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), provide independent foundations requiring the preservation of evidence.[10] The court further hammered home the point that the courts, not the investigators or the prosecutors, make the decision as to whether evidence is discoverable, and that this decision cannot be made if the evidence has been destroyed.

Several circuits have recently ruled that rough notes taken by a government agent in an interview with the accused or written summaries of a defendant's oral statements are discoverable under Rule 16 of the Federal Rules of Criminal Procedure. *United States v. Johnson,* 525 F.2d 999, 1003–1004 (2d Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976); *United States v. Lewis, supra; United States v. Fallen,* 498 F.2d 172 (8th Cir. 1974); *see*

also, *United States v. Crisona,* 416 F.2d 107, 114–115 (2d Cir. 1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970); *but see, United States v. Krilich,* 470 F.2d 341, 351 (7th Cir. 1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1897, 36 L.Ed.2d 399 (1973); *United States v. Fioravanti,* 412 F.2d 407, 411–412 n. 12 (3d Cir. 1969), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *Kaplan v. United States,* 375 F.2d 895, 900 (9th Cir. 1967); *cert. denied,* 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967).

In *Lewis,* the court noted that the discovery of a defendant's statements to law enforcement agents is of the utmost importance in the preparation of a criminal defense. *United States v. Lewis, supra,* 511 F.2d at 802. The Advisory Committee's Notes to Rule 16 of the Federal Rules of Criminal Procedure reveal that a majority of the American Bar Association's Committee on Standards Relating to Discovery and Procedure Before Trial rejected the restrictive Jencks Act definition of producible "statement". The majority adopted:

" * * * the view that the defendant ought to be able to see his statement in whatever form it may have been preserved in fairness to the defendant and *to discourage the practice, where it exists, of destroying original notes, after transforming them into secondary transcriptions, in order to avoid cross-examination based upon the original notes.*" Notes of Advisory Committee, Fed.R.Crim.P. 16 (emphasis added).

Although the record in this case does not reflect a discovery motion pursuant to Rule 16 by the appellant, the above-cited authorities underscore the importance of preserving original interview notes. Accordingly,

---

**10.** Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure now provides in pertinent part:

"*Statement of Defendant.* Upon request of a defendant the government shall permit the defendant to inspect * * * the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent."

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963), the Supreme Court held:

" * * * that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

we follow the *Harrison* case in holding that the original interview notes, especially relating to an FBI agent's interview with the accused, must be preserved.

■ However, in the circumstances of this case, we are convinced that the trial judge's refusal to strike the testimony of the FBI agent because the notes were not produced was harmless error. Harris does not assert that the FBI agent misstated during his testimony at trial what had been related to him during the interview. Although Harris indicated that he did not remember saying everything that had been attributed to him by the agent, he does not claim that the agent lied. Nor does the appellant contend that the version of the interview record in the 302 report was incomplete or inaccurate. Moreover, as noted earlier, the agent's testimony was actually favorable to the appellant since the timing of the events as related by the agent was inconsistent with a finding that Harris made a threatening call at about 1:30 a. m. We, therefore, conclude that in this case no substantial rights of the appellant have been affected by the destruction of the rough notes herein and that any error was harmless. *See, United States v. Johnson, supra,* 521 F.2d at 1320; *see also, United States v. Carrasco, supra,* 537 F.2d at 377; *United States v. Johnson, supra,* 525 F.2d at 1005; *United States v. Crisona, supra,* 416 F.2d at 112–116.

We reiterate our holding, however, that the FBI must hereafter preserve the original notes taken by agents during interviews with prospective government witnesses or with an accused. The preservation of such evidence is necessary in order to permit courts to play their proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law.

AFFIRMED.