**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Salvatore James PISELLO,
Defendant–Appellant.**

No. 88–5156.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1989.

Decided June 8, 1989.

Irving Anolik, New York City, David R. Hinden, Glassman & Browning, Beverly Hills, Cal., for defendant-appellant.

Alan Hechtkopf, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SNEED, FARRIS and PREGERSON, Circuit Judges.

SNEED, Circuit Judge:

Salvatore James Pisello appeals his conviction of two counts of tax evasion in violation of 26 U.S.C. § 7201 (1982). He argues that the district court erred by constructively amending his indictment, improperly allocating the burden of proof, convicting him with insufficient evidence, and refusing to order production of handwritten notes made by the government's agents during interviews with witnesses. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

Pisello worked in the phonograph record industry from 1983 to 1985. His precise role is unclear. During this time, however, he entered into transactions that are relevant to this case with MCA Records, Inc. (MCA), Sugar Hill Records, Ltd. (Sugar Hill), and Betaco Enterprises (Betaco). A brief description of each follows.

### A. *MCA Transactions*

In June 1984, MCA gave Pisello $30,000 to investigate the feasibility of establishing a "Latin record label." Several factors make this payment look like a loan. The parties allegedly agreed that Pisello would return the money if MCA did not accept a proposal from him, MCA carried the payment on its books as an account receivable, and when Pisello failed to repay the money, the company wrote the sum off as a bad debt. On the other hand, MCA and Pisello did not document the transaction in any way and MCA issued Pisello a Form 1099 for reporting the payment to the Internal Revenue Service (IRS) as nonemployee compensation. Perhaps this was to advance the income tax reduction purposes of MCA.

In January 1985, MCA paid Pisello an additional $50,000. MCA later asked Pisello for three checks for $60,000 to show its auditors that it was attempting to collect money from him. This was consistent with MCA treating the payments as creating an account receivable. Pisello gave MCA the checks but he had insufficient funds to cover them. The following year, MCA sent Pisello a Form 1099 for the $50,000 payment. Pisello's accountant, in response, sent MCA a letter asserting that the payment was a loan.

### B. *Sugar Hill Transactions*

In 1984, Sugar Hill paid Pisello approximately $156,109 in connection with his efforts to persuade to MCA to distribute Sugar Hill's records and to purchase Sugar Hill's "catalog" of master recordings. Again, several factors make Sugar Hill's payments to Pisello resemble loans. For example, Sugar Hill's president, Milton Malden, and one of its owners, Joseph Robinson, have testified that the payments were loans and that they thought that Pisello would repay them. Sugar Hill, in fact, treated the payments as loans on its books and told Pisello that it was treating them as loans. On the other hand several factors make the payments look like advances against the money that Pisello would receive as a commission if MCA purchased Sugar Hill's catalog. Malden has admitted that no loan documents were made, that he expected Pisello to repay Sugar Hill out of his commission, that the parties originally called the payments advances, and that Pisello did not repay the money.

### C. *Betaco Transactions*

Finally, from 1983 to 1985, Ranji Bedi, the owner of Betaco made a number of a payments to Pisello in connection with his efforts to set up several deals with MCA records. Federal agents found an undated check in Bedi's files issued to Bedi and purportedly drawn by Pisello. Bedi has testified that he had no idea how the check made its way into his files and that, if Pisello had given it to him, he would have negotiated it.

### D. *Subsequent Events*

This case arises because Pisello did not report all of the money that he received in the foregoing transactions, and other transactions, as income on his income tax returns for 1983 and 1984 and he failed to file

a tax return for 1985. In 1986, a grand jury indicted Pisello on three counts of attempting to evade or defeat income tax under 26 U.S.C. § 7201 (1982). Count I alleged that Pisello had reported that he had lost income in 1983, when in fact he had made approximately $73,660.00. Count II alleged that Pisello had reported that he had made $95,306.00 in 1984, when in fact he had made approximately $281,-166.00. Count III alleged that Pisello had made approximately $115,600.38 in 1985. Before the trial began, the government gave Pisello about twenty formal memoranda summarizing its agents' interviews of witnesses in the case and one set of handwritten notes from one of these interviews. Pisello later moved unsuccessfully for production of the handwritten notes from the other interviews.

The district court acquitted Pisello of count I, but convicted him of counts II and III. The court ruled that Pisello had attempted to commit tax evasion for the years 1984 and 1985 by failing to pay a substantial amount of tax on income received from Sugar Hill, Betaco, and MCA, and by committing willful, affirmative acts of tax evasion. The court found that all of the payments that Pisello had received in the transactions were advances, that is, compensation, rather than loans. It ruled that Pisello had attempted to conceal the nature of these advances for the year 1984 by: (1) giving MCA worthless checks; and (2) converting the payments into cash or depositing them into corporate accounts under his control. It ruled that Pisello had attempted to conceal the nature of the advances for the year 1985 by (1) giving MCA worthless checks; (2) causing his accountant to send a letter to MCA objecting to receipt of the Form 1099; and (3) providing Bedi with the undated check described above.

The district court sentenced Pisello to four years of imprisonment on count II and to three years of probation on count III. Pisello, free on a $100,000 bond, timely appealed to this court.

## II.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court has jurisdiction under 28 U.S.C. § 1291 (1982).

## III.

## STANDARDS OF REVIEW

Pisello, as noted above, raises four issues on appeal. We review the allegation that the court constructively amended his indictment de novo. *See United States v. Lipkis,* 770 F.2d 1447, 1452 (9th Cir.1985). As a legal issue, we review the allocation of the burden of proof de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We do not review it for plain error because, as we explain below, Nichols properly raised the issue in the district court. *See United States v. Greger,* 716 F.2d 1275, 1277 (9th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). We review the sufficiency of the evidence by looking at it in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir. 1984). We review for abuse of discretion the court's decision not to order production of the handwritten notes under the Jenks Act, 18 U.S.C. § 3500 (1982). *See United States v. Cowley,* 720 F.2d 1037, 1040 n. 1 (9th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984). We review de novo the court's decision not to produce the notes under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). *See United States v. Lehman,* 792 F.2d 899, 901 (9th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). *But see United States v. Michaels,* 796 F.2d 1112, 1116 (9th Cir. 1986), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987) (ruling that a district court did not abuse its discretion in denying production of agents' rough notes).

## IV.

### CONSTRUCTIVE AMENDMENT OF COUNT II

Pisello argues that the court must reverse his conviction under count II because the district court went beyond the confines of the indictment in reaching its verdict. Analyzing the $30,000 payment that Pisello received from MCA in 1984, the district court stated:

> [T]he $30,000 in funds paid to Mr. Pisello for his proposal to establish a Latin music label were monies earned by Mr. Pisello in 1984. The indictment, as charged, had contemplated this income to be earned in 1985.... The Court finds that this inclusion of this income as proof of tax evasion in 1984 is not a fatal variance from the allegation in the indictment.

Pisello disagrees, charging that the grand jury indicted him for failing to pay tax on income from Sugar Hill and Betaco, but the district court convicted him for failing to pay tax on income from Sugar Hill, Betaco, *and* MCA.

In *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984), we said that a constructive amendment occurs when "the crime charged [is] substantially changed at trial, so that it [is] impossible to know whether the grand jury would have indicted for the crime actually proved." The court added, however, that a mere variance occurs when the prosecution's evidence proves facts different from those alleged in the indictment. *See id.* The line essentially is between the situation in which different evidence supports the charged crime and that in which the evidence supports a crime other than that charged. Although the latter, an amendment, requires reversal, the former, a variance, does not warrant reversal unless it affects the substantial rights of the defendant. *See id.* at 587.

Pisello contends that the time of receiving income is an essential element of tax evasion. He maintains, therefore, that changing the time at which he allegedly received the $30,000 payment from MCA constituted proof of a crime not alleged in the indictment. To support his position, Pisello cites three significant cases: *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (amendment occurred when jury was allowed to consider a theory of how defendant had interfered with interstate commerce that was not alleged in the indictment); *United States v. Solis*, 841 F.2d 307, 308–09 (9th Cir.1988) (amendment occurred when jury was allowed to convict the defendant of either possession or distribution of heroin when the indictment did not allege possession); and *United States v. Cusmano*, 659 F.2d 714, 719 (6th Cir.1981) (amendment occurred when jury was allowed to find extortion by threats of physical violence when the indictment alleged only threats of economic loss).

The government responds in two ways. First, it argues that consideration of the $30,000 did not alter the charging terms of count II of the indictment because it simply alleged Pisello failed to pay a substantial amount of tax on an approximate sum of taxable income for the year 1984. Second, the government argues that in a tax evasion case, the government must prove only that the defendant attempted to evade a substantial amount of tax, but not the exact amount of tax evaded. *See United States v. Stone*, 770 F.2d 842, 845 (9th Cir.1985). The government concludes that Pisello committed the same offense whether he evaded the tax on $197,000 in income or $227,000 in income.[1]

■ We agree with both of the government's contentions. There was no amendment of the indictment. While we cannot assert that the cases Pisello cites do not lend some weight to his claim, we do believe that the convictions in those cases may have rested on theories that would not have persuaded the grand jury to indict. That is not the case here. At worst the conviction rested on two theories, the theo-

---

1. Pisello's income excluding the $30,000 MCA payment was $197,000. The district court, in consideration of count III, found that the tax on $115,000 in income was a "substantial" amount of tax.

ry that Pisello did not pay taxes on the Sugar Hill and Betaco payments, and the theory that Pisello also did not pay taxes on the MCA transaction. The indictment also rested on those two theories. The cases cited by Pisello, we believe, dealt with verdicts resting on proof so different from the proof accepted by the indicting grand jury that substantial rights of the defendant were affected. No such prejudice exists here.

## V.

### BURDEN OF PROOF ON COUNT II

Pisello next challenges the district court's allocation of the burden of proof. In deciding whether to characterize the payments that Pisello received from MCA and Sugar Hill as loans or advances, the court stated from the bench, "I find insufficient evidence to find that a loan existed." Both parties then submitted proposed findings of fact and conclusions of law to the district court. Pisello, who submitted his proposal pursuant to Fed.R.Crim.P. 23(c), did not single out the burden of proof issue in any particular way, but did ask the court to rule that "the burden is upon the Government to prove that [any] transaction was not a loan...." The district court accepted the government's proposal and stated in its written order: "There was insufficient evidence presented at trial that a loan ever existed or that Mr. Pisello intended that a loan be credited against him."

Pisello contends that the words of the court's oral and written orders show that the court required him to prove that the MCA and Sugar Hill payments were loans, whereas it was the government's obligation to prove beyond a reasonable doubt that they were income, not loans. The government asserts that Pisello failed to raise the issue in the district court and that Pisello has misinterpreted the court's decision.

### A. *Raising the Burden of Proof Issue*

■ The parties agree that if Pisello raised the burden of proof issue in the district court, we may review it de novo, but that, otherwise, we may review it only for plain error. *See United States v. Benny,* 786 F.2d 1410, 1417–18 (9th Cir.1986). Although we have not addressed the correct means of preserving questions about the allocation of the burden of proof in nonjury trials, we believe that Pisello's Rule 23(c) motion sufficed. *See* 2 C. Wright, *Federal Practice and Procedure* § 374, at 313–14 (2d ed. 1982) ("A request for special findings is the appropriate way to preserve for appeal a contention that the court applied an erroneous standard of law...."); *see also United States v. Morris,* 263 F.2d 594, 595–96 (7th Cir.1959) (same); *Wilson v. United States,* 250 F.2d 312, 325 (9th Cir.1957) (same).

### B. *What the District Court Decided*

If the district court had required Pisello to prove that the payments were loans, we would have to conclude that the court erred. *See Holland v. United States,* 348 U.S. 121, 138–39, 75 S.Ct. 127, 136–37, 99 L.Ed. 150 (1954) (holding that the government always retains the ultimate burden of proving every element of a tax offense beyond a reasonable doubt). Also, we agree that the district court could have phrased its comment about whether a loan existed more carefully.

■ When the district court said that there was insufficient evidence to show that a loan existed, we do not accept the view that the court thought that Pisello had the burden to establish that a loan existed. The court was merely observing that having considered both the government and Pisello's evidence he was deciding the issue against him. This in no way indicates that the district court did not know that the government must prove its case beyond a reasonable doubt. Appellate review does not require that we suspend reason while interpreting the language employed by district judges. We conclude that the court did not place the burden of proof on Pisello.

## VI.

### SUFFICIENCY OF THE EVIDENCE ON COUNT III

Pisello argues next that the government did not produce sufficient evidence to sus-

tain his conviction under count III of the indictment. We disagree. To prove attempted tax evasion under 26 U.S.C. § 7201, the government must show only the existence of a tax deficiency and a willful, affirmative act constituting evasion or attempted evasion. *See Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). Pisello does not contest the existence of a tax deficiency but argues that the district court erred in finding that he attempted to conceal his income by giving worthless checks to MCA, causing his accountant to send a letter to MCA, and giving a check to Bedi.

The Supreme Court in *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943), established the relevant standard:

> [An] affirmative willful attempt [of tax evasion] may be inferred from conduct such as ... handling ... one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out....

### A. *The MCA checks*

▌ Pisello argues that the MCA checks cannot prove that he committed a willful act of tax evasion because uncontradicted testimony showed that MCA requested the checks from him. This fact is not controlling. Pisello recognized the opportunity to claim that his payments from MCA were loans and thus tax evasion played a part in his conduct when he gave the checks to MCA. Attempting to characterize income as loans to evade taxes is an old device that the courts have not and cannot tolerate when enforcing § 7201. *See, e.g., United States v. Wiese*, 750 F.2d 674, 677 (8th Cir.1984). True, Pisello may have wished to accommodate MCA by giving it the checks. The district court's conclusion that Pisello also sought to help himself was not incorrect.

### B. *The Accountant's Letter*

Pisello deals with the accountant's letter in two ways. He attempts to insulate himself from his accountant by denying that the government has shown that he authorized his accountant to write a letter to MCA. He then argues that a court, in any event, cannot find a mere request to correct an erroneous form an attempt to "mislead" or "conceal." This mischaracterizes the evidence. After MCA sent the 1099 Form to Pisello, Pisello's accountant could have known about the form only if Pisello had brought it to his attention. The accountant could not have concluded that the payment was a loan rather than income unless he was so persuaded by Pisello. The 1099 was erroneous only if Pisello's version of the facts were accepted. The government successfully proved that version erroneous. The accountant's letter certainly supports a finding of willfulness under the *Spies* standard.

### C. *Bedi's Check*

Pisello points out that the government produced no evidence indicating that he delivered a check to Bedi or that he used a check in any manner likely to mislead the IRS. He notes, moreover, that Bedi testified that he would have negotiated any check given to him. Pisello's position on this point is strong. The check exists, however, and permits the inference that it was delivered. While the check, alone, might not sustain Pisello's conviction, when coupled with the MCA checks and the accountant's letter, the evidence would allow a rational trier of fact to find Pisello guilty under count III beyond a reasonable doubt.

### VII.

### PRODUCTION OF THE AGENT'S NOTES

Finally, Pisello argues that his trial was unfair because the district court denied his motion to compel production of the handwritten notes made by the government's agents. Pisello maintains that the court should have ordered production under either the Jencks Act, 18 U.S.C. § 3500 (1982), or *Brady v. Maryland*, 373 U.S. 83,

87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). We disagree.

### A. *Jencks Act*

The Jencks Act gives criminal defendants a fair opportunity to impeach government witnesses. After a government witness has testified at trial, the Act requires the government to produce, upon demand, any "statement" made by the witness in its possession that relates to the subject matter of his testimony. 18 U.S.C. § 3500(b). The term "statement" includes:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id.* § 3500(e). Pisello contends that the agents' handwritten notes contain statements as defined in § 3500(e)(2) because the government produced typed, formal memoranda based on the notes.

■ This does not establish that notes contain statements. Although this court has stated that notes taken by FBI agents in interviews with prospective government witnesses may contain such statements, *see United States v. Harris,* 543 F.2d 1247, 1252 (9th Cir.1976), whether they do in any particular case remains a question of fact, *see United States v. Miller,* 771 F.2d 1219, 1231 (9th Cir.1985). Pisello's argument that the government admitted that the notes came within the Jencks Act merely because it produced the formal memoranda based on the notes goes too far. The government produced the formal memoranda more or less voluntarily.[2] We decline to hold that the government must surrender all material connected with any formal memoranda that it produces in circumstances such as those of this case. Our position rests on the assumption that the government will proceed fairly in its handling of Jencks material. To do otherwise would jeopardize not only the rights of those accused, but also the efficient administration of justice in the long run.

Pisello also has not shown that any statements would have affected his trial. He has not suggested any way that the notes could help him overcome the hard evidence that the district court used to convict him. *See Michaels,* 796 F.2d at 1116. We therefore cannot reverse. *See United States v. Wallace,* 848 F.2d 1464, 1471 (9th Cir.1988) (Jencks Act violations normally do not implicate the constitutional rights and thus do not merit reversal when more likely than not harmless).

### B. *Production under Brady v. Maryland*

Pisello also invokes *Brady* rights. Under *Brady v. Maryland,* the government has an obligation to surrender to a defendant exculpatory evidence "material to guilt or to punishment." 373 U.S. at 87, 83 S.Ct. at 1197. Pisello argues basically that the agents' notes might contain discrepancies from the written memoranda and the testimony at trial that he might have used to impeach the government's witnesses. We are unpersuaded that such evidence could have affected the outcome of his trial. An order to produce the agents' handwritten notes was not required.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I dissent. The Jencks Act requires the government to produce any witness's statement related to his or her testimony at

---

2. The district court ordered the government to produce Jencks materials, but did not rule that these materials included the formal memoranda. Although the district court might have found production of the memoranda required if it had considered the issue, this court has never held that such memoranda contain Jencks statements in all instances. *See, e.g., United States v. Claiborne,* 765 F.2d 784, 801 (9th Cir.1985) (FBI summaries of notes did not qualify as Jencks materials).

trial. *See* 18 U.S.C. § 3500(e) (1982); *United States v. Michaels,* 796 F.2d 1112, 1116 (9th Cir.1986). In the present case, the government produced typed memoranda in response to the district court's order that the government make available Jencks Act materials to the defendant. These typed memoranda were based on handwritten notes taken by government agents during interviews with potential witnesses. I find merit in Pisello's argument that because the typed memoranda contain Jencks statements, the handwritten notes from which the memoranda derive also must contain Jencks statements. At the very least, this case should be remanded to the district court for an evidentiary hearing to determine whether the withheld notes qualify as Jencks Act materials. At such time, the district court could determine, based on an *in camera* inspection of the handwritten notes, whether the handwritten notes are Jencks Act materials. *See United States v. Johnson,* 521 F.2d 1318, 1320 (9th Cir. 1975) (Sneed, J.) (holding that the district court erred in refusing to compel production of handwritten notes because "it acted without inspecting them, *in camera* or otherwise.").

The majority opinion rests its conclusion that the district court acted properly in regard to the handwritten notes "on the assumption that the government will proceed fairly in its handling of Jencks material." Majority Opinion at 768. Yet the majority offers no legal authority in support of this assumption. Rather, the majority seeks to justify its position by the rationale that unless courts assume that the government acts fairly in handling Jencks materials, the rights of the accused and the efficient administration of justice will be jeopardized. *Id.*

The proposition that faith in the fairness of the government's conduct will protect the rights of the accused seems to me hard to sell. Moreover, we have stated that questions concerning Jencks materials are not for the government to resolve. *Johnson,* 521 F.2d at 1320.