**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Pablo ROMERO, also known as Pablo Gilberto Romero–Flores, also known as Sonny, Defendant—Appellant.**

**No. 02–10399.**

**D.C. No. CR–00–00186–WJR.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2003.

Decided Sept. 24, 2004.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Thomas C. Muehleck, Asst. U.S. Atty., United States Attorney, Honolulu, HI, for Plaintiff–Appellee.

Loretta A. Sheehan, Asst. U.S. Atty., Office of the United States Attorney, Honolulu, HI, Georgia K. McMillen, Wailuku, HI, for Defendant–Appellant.

Before BROWNING, REINHARDT, and THOMAS, Circuit Judges.

MEMORANDUM *

Pablo Romero appeals his conviction for conspiracy to distribute heroin (Count 1) and aiding and abetting in the possession with intent to distribute heroin (Count 20). Romero contends that the jury instructions impermissibly amended Count 20 of the First Superseding Indictment in violation of the Fifth Amendment. Romero also contends that the jury's guilty verdicts on Counts 1 and 20 of the First Superseding Indictment were inconsistent, and thus must be reversed for insufficient evidence. For the following reasons, we AFFIRM.

## A. Factual Background

In mid–1998, the DEA received information regarding the drug trafficking activities of Felipe Ruiz–Castro and Francisco Mora–Garcia in Hawaii, resulting in a massive drug investigation and prosecution. The investigation revealed that Romero served as a heroin distributor on Maui for Jorge Salazar in 1999 and 2000. At this time, Romero's girlfriend was Melinda Vanetten. Vanetten would often accompany Romero to Salazar's home, where she witnessed Romero give Salazar around $200 at least once a week, and also witnessed Salazar give Romero quantities of heroin for him to distribute. Vanetten accompanied Romero in his car as he distributed heroin on Maui to ten to twelve clients.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

In March 2000, Romero asked Vanetten to travel to California to collect heroin. After Romero threatened to end their relationship if she refused, Vanetten agreed to go on the trip. Romero took Vanetten to Salazar's home, where Salazar told her that she was to meet Jessica Guzman–Soto in California and give her $3000 for an amount of heroin. Vanetten was given a plane ticket for the trip, and a pair of shoes with hollowed-out heels in which she was to smuggle the heroin back to California. Romero accompanied her to the Kahului airport.

In Los Angeles, Vanetten was picked up by Guzman–Soto. They hid the heroin in the hollowed out heels of Vanetten's shoes and in her pants. As she arrived at the Ontario airport to return to Hawaii, she was arrested by federal agents, who found the heroin. Without explanation, Vanetten was released from custody. She returned to her hotel room, and attempted to call Romero. After failing to reach him, Vanetten called Salazar, told him about the arrest, and asked for money for a return ticket. Vanetten also asked Salazar to tell Romero about the arrest. Salazar and Romero wired her the money she requested. When Vanetten returned to Hawaii, Romero picked her up. On April 8, 2000, Romero was arrested along with several co-defendants during a raid of Salazar's home.

On May 25, 2000, the Government filed a First Superseding Indictment against Romero and 22 co-defendants.[1] During Romero's trial, five co-defendants, each of whom had previously signed plea agreements with the Government, testified concerning Romero's participation in the conspiracy. Vanetten was one such witness. Other witnesses included various law enforcement officials who participated in the investigation, whose testimony corroborated much of the testimony given by the various co-defendants.

The jury returned a verdict finding Romero guilty of all charges against him, except for Counts 5, 26, and 42. With respect to Count 5, the jury found him guilty of the lesser included offense, possession. On June 27, 2002, the district court sentenced Romero to a 98–month prison term, to be followed with five years supervised release.

### B. Constructive Amendment

In Count 20, the Indictment alleged that on March 31, 2000, Romero and several co-defendants aided and abetted each other in the possession with intent to distribute over 100 grams of heroin. Romero asserts that the the relevant jury instructions constructively amended Count 20 in violation of the Fifth Amendment because: (1) they did not include the date of the transaction; (2) they did not specify the identities of the co-defendants allegedly involved in the transaction; and (3) they stated that Romero could be convicted if the amount of heroin involved in the transaction was more or less than 100 grams.

Typically, we review an allegation that the district court constructively amended an indictment de novo. *United States v. Pisello,* 877 F.2d 762, 764 (9th Cir.1989).

---

1. The 56–count First Superseding Indictment charged Romero with: (a) conspiring with Salazar and others to distribute more than 100 grams of heroin and a quantity of cocaine (Count 1); (b) distributing heroin (Count 3); (c) possessing heroin with the intent to distribute (Count 5); (d) aiding and abetting the possession of in excess of 100 grams of heroin with intent to distribute on March 31, 2000 (Count 20); (e) using a communications facility (telephone) in causing the commission of a conspiracy to distribute heroin (Counts 26, 27, 28, 31, 32, 36, 42, and 51); and (f) unlawfully reentering the United States after being deported previously (Count 53).

Because Romero failed to object to the district court's jury instructions, however, we review for plain error only. *United States v. Dipentino*, 242 F.3d 1090, 1094 (9th Cir.2001); *United States v. Jimenez–Borja*, 363 F.3d 956, 961 (9th Cir.2004), *amended by* 378 F.3d 853 (9th Cir.2004) (concluding that a constructive amendment did not constitute plain error). Under *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we may reverse a district court only if: (1) there was error; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732–36.

■ The jury instructions constituted plain error. They impermissibly broadened the scope of Count 20 to cover any act of aiding and abetting at any time, regardless of the particular transaction involved or the amount of contraband. Since the Indictment alleged and the Government presented evidence concerning numerous heroin transactions, Romero could have been convicted on the basis of the jury's belief that he aided and abetted a heroin transaction other than the March 31 transaction charged in Count 20. *See Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir.1975). As a result, the error potentially affected Romero's substantial rights.

■ However, Romero's claim fails under the fourth prong of the *Olano* standard. Following the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), we have held that "[i]n conducting our review of this [fourth] element, we consider all circumstances at trial including the strength of the evidence against the defendant," *United States v. Perez*, 116 F.3d 840, 847 (9th Cir.1997) (en banc) (internal quotation omitted), and "the strength of the evidence in support of the element omitted from the instructions." *United States v. Anderson*, 201 F.3d 1145, 1152 (9th Cir.2000); *see also United States v. Barajas–Montiel*, 185 F.3d 947, 953 (9th Cir.1999) (no prejudice where evidence overwhelmingly demonstrated the intent erroneously omitted from the jury instructions); *United States v. Leon–Reyes*, 177 F.3d 816, 823 (9th Cir.1999) (prosecutor's improper comments at trial did not affect the fairness of the trial where evidence was overwhelming).

At trial, the Government presented overwhelming evidence that Romero was involved in the March 31 transaction. Vanetten's testimony described Romero's involvement in the March 31 transaction at length. Specifically, Vanetten testified that Romero and Salazar approached her in March 2000, asking her to make a trip to California to smuggle heroin replacing Salazar's girlfriend as a drug courier. Vanetten stated that Romero threatened to end their relationship if she refused to go on the trip. Vanetten testified that prior to her departure, Romero brought her to Salazar's house, where Salazar gave her instructions and a plane ticket to California. Vanetten also testified that Romero drove her to the airport on March 30, 2000. After she was arrested and released in California on March 31, 2000, Vanetten first called Romero to tell him of her arrest. After failing to reach him, she called Salazar to ask for money for her return trip. Vanetten testified that Romero picked her up when she returned to Hawaii.

Vanetten's testimony concerning Romero's involvement in the March 31 transaction was corroborated by several wiretaps of conversations between Vanetten, Romero, and Salazar played during trial. For instance, Vanetten testified that Guzman–

Soto was to meet her at her hotel in California to initiate the drug exchange on March 30, 2000. That day, a wiretap intercepted a phone conversation between Romero and Salazar, in which Romero informed Salazar of Vanetten's hotel and room number in an effort to facilitate the transaction. Later that same day, the wiretap recorded a conversation between Romero and Salazar, asking Salazar whether Vanetten had successfully collected the heroin. A wiretap also recorded Vanetten's call to Salazar on March 31, 2000, when she requested money for her return trip to Hawaii. During trial, the Government presented a Western Union receipt that demonstrated that Romero was the person who wired her that money.

Moreover, it is unlikely that the jury was confused about which heroin transaction was at issue in Count 20. During both the Government's opening and closing argument, the Government expressly stated that Count 20 involved only the March 31 transaction, and outlined for the jury the overwhelming evidence of Romero's participation in that transaction. The defense also reminded the jury in its closing argument that Count 20 involved the March 31 transaction only, and argued extensively that the evidence established only that Vanetten decided to go to California on her own and without Romero's consent.

Although the jury instructions concerning Count 20 constituted plain error, Romero's conviction must be affirmed under *Olano* because of the overwhelming evidence introduced concerning Romero's involvement in the planning and execution of the March 31 transaction.

### C. Consistency of Verdicts on Counts 1 and 20

■ Romero argues that the guilty verdicts on Counts 1 and 20 were impermissibly inconsistent. Romero asserts that a criminal defendant cannot be convicted of a crime and aiding and abetting the commission of that crime. From this premise, Romero contends that because the Government charged Romero as a principal in Count 1 for conspiring with 22 co-defendants to possess with intent to distribute more than 100 grams of heroin, the Government could not also charge him with aiding and abetting in the commission of an overt act of that conspiracy, i.e., Vanetten's attempted smuggling 90.64 grams of heroin on March 31, 2000.

The gravamen of Romero's argument is that he was charged for the same offense twice. However, an individual can be charged and convicted for both conspiracy and an underlying substantive offense committed in furtherance of that conspiracy without violating the Double Jeopardy Clause. *United States v. Felix*, 503 U.S. 378, 390, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) (quoting *United States v. Bayer*, 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947)) ("[T]he same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself."). It was not inconsistent or impermissible for the jury to convict Romero of the conspiracy (Count 1), and an underlying overt act of the conspiracy (Count 20).

The issuance of the mandate is stayed pending the United States Supreme Court's decision in *United States v. Booker*, No. 04–104, and *United States v. Fanfan*, No. 04–105.

AFFIRMED.