NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. PHILIP LAYFIELD, AKA Philip Samuel Pesin Defendant-Appellant. | Nos. 22-50047 22-50133 D.C. No. 2:18-cr-00124-MWF-1 MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 16, 2024
Pasadena, California

Before: TALLMAN, IKUTA, and OWENS, Circuit Judges.

Philip James Layfield appeals from his convictions after a jury trial on

nineteen counts of wire fraud (counts 1-19), one count of mail fraud (count 23),

one count of attempt to evade and defeat tax (count 26), one count of willful failure

to collect or pay over tax (count 27), and one count of misdemeanor failure to file a

tax return (count 28). He brings various challenges to counts 1-4, 6, 8-10, 12-13,

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

16-17, and 26. As the parties are familiar with the facts, we do not recount them here. We affirm.[1]

1.     Layfield brings three sufficiency-of-the evidence challenges to certain wire fraud convictions. We review claims of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this deferential standard, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt for all the wire fraud convictions Layfield challenges. *See id.*

A.     Layfield argues that *Parr v. United States*, 363 U.S. 370 (1960), requires us to reverse his convictions on counts 1-4, 6, 8-9, and 12-13.[2] Specifically, Layfield contends that, because the wires at issue deposited client settlement money into the firm's trust account in accordance with California law, such legally compelled wirings cannot support a conviction for wire fraud. Because *Parr* is distinguishable, we reject Layfield's argument.

We have previously "held that *Parr* does not insulate from federal prosecution mailings whose necessity under law was triggered by the fraudulent

---

[1] We address Layfield's global speedy trial challenge to his convictions in a concurrently filed published opinion, in which we also affirm.

[2] While *Parr* is a mail fraud case, "[i]t is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either." *United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004), *overruled on other grounds by United States v. Miller*, 953 F.3d 1095, 1102-03 (9th Cir. 2020). Accordingly, we refer to mail fraud and wire fraud cases interchangeably throughout our discussion.

scheme." *United States v. Bernhardt*, 840 F.2d 1441, 1447 (9th Cir. 1988) (citing

*United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984)). In *Mitchell*, the defendant

had been convicted of various counts of mail fraud for using his position as a city

council member to secure approval of a project for which he received a kickback.

744 F.2d at 703. To secure the city's approval for such a project, city ordinances

required that certain notices be mailed to various interested parties. *Id.* at 704.

Mitchell argued that his convictions could not stand under *Parr* because the notices

on which they were predicated were "required by law to be sent." *Id.* We

concluded, however, that "*Parr* is inapposite":

> The tax statements, checks, and receipts mailed in *Parr* were sent out
> regularly and routinely [pursuant to the state constitution] and would
> have been mailed even if the scheme to defraud the district had not
> existed. In Mitchell's case, the fraudulent scheme triggered the
> mailings, which would not have occurred except as a step in the
> scheme.

*Id.* Our decision in *Bernhardt* later applied *Mitchell* to conclude that *Parr* also

does not insulate "mailings required by a private agreement, wherein one of the

parties to the agreement is seeking to defraud the other." *Bernhardt*, 840 F.2d at

1447 (emphasis omitted).

Our decisions in *Mitchell* and *Bernhardt* control this case, not *Parr*;

Layfield's duty under state law to deposit client money into a trust account

"stemmed from" his fraudulent representation of, and contractual arrangements

with, each of his firm's clients. *Bernhardt*, 840 F.2d at 1447. Accordingly, in

3

describing Layfield's fraudulent scheme, the indictment had alleged that "[i]n connection with causing clients to execute Retainer Agreements, . . . [Layfield] represented, promised, and maintained the pretense that he and [his firm] would . . . zealously and diligently represent clients' interests and hold, in trust for the benefit of each client, case disposition proceeds and use those proceeds only as permitted by applicable laws, rules, and regulations governing the ethical practice of law." Those retainer agreements generally "provided that [the firm] could deposit [settlement] money . . . into a trust account without notice to, or further authorization from, the client." The wires into the trust account were the result of the services that Layfield had falsely represented he would perform in accordance with his fiduciary duty to protect and hold their funds in trust. In other words, Layfield's fraudulent representations led to the firm's services to clients which in turn led to the receipt of settlement funds that were then deposited into the trust account. Therefore, because Layfield's "fraudulent scheme . . . triggered the applicability of the local law that required the [wires]," *Parr* cannot immunize Layfield. *Id.*

Nor does the fact that the deposits were not false on their face compel a different conclusion. The Supreme Court has been clear that a wire that is "routine and innocent in and of itself" may satisfy the wire element of the offense, as long as the wire is "a step in [the] plot" of the fraudulent scheme. *Schmuck v. United*

4

*States*, 489 U.S. 705, 711 (1989) (alteration in original) (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916)).  Indeed, *Schmuck* cited *Parr* for *Parr*'s "specific[] acknowledge[ment] that 'innocent' mailings—ones that contain no false information—may supply the mailing element."  *Id.* at 715 (quoting *Parr*, 363 U.S. at 390).

We affirm Layfield's convictions on counts 1-4, 6, 8-9, and 12-13.

B.     We also reject Layfield's challenge to his wire fraud conviction on count 10; sufficient evidence supported the conclusion that Layfield caused the firm's litigation director to charge a client $25,623.94 as a fraudulent "Miscellaneous Expense."

A rational juror could have found that Layfield caused the email containing that charge to be sent to the client.  *See Pereira v. United States*, 347 U.S. 1, 8-9 (1954) (causality satisfied where a person "does an act with knowledge that the use of [a wire] will follow in the ordinary course of business, or where such use can reasonably be foreseen").  Six weeks before the client received that charge, Layfield had instructed the firm's Chief Financial Officer to allocate $371,869.53 in past costs that had not been "properly or individually accounted for . . . as miscellaneous expenses among all of our outstanding cases pro rata based on the total balance."  Layfield's email had insisted that the firm "can't take a $371,869.53 loss on this."

5

Though it is not clear exactly what costs the firm allocated to which clients, a rational juror could have found Layfield guilty of this count for making "it seem as though the client was paying miscellaneous expenses for that client's own case, when in fact, unbeknownst to the client, that person was paying expenses for somebody else's case"—as the government argued in closing. Contrary to Layfield's contention, whether another person at the firm—who may or may not have been aware of Layfield's billing instructions—thought the charge was appropriate does not make evidence of fraud insufficient under *Jackson*. Thus, we uphold Layfield's conviction on count 10.

        C.     Sufficient evidence also supported counts 16 and 17. Layfield asserts that his failure to disclose the existence of a past fee-sharing agreement to a loan underwriter—who had inquired about such fee-sharing agreements and the existence of co-counsel—was not a material misrepresentation.

Layfield contends that *Olsen v. Harbison*, 119 Cal. Rptr. 3d 460 (Ct. App. 2010), extinguished any prior fee-splits with co-counsel as a matter of law. But *Olsen* involved a situation where the client—not an attorney—had fired co-counsel. *Id.* at 466. Regardless of whether *Olsen* applied, a rational juror could have found that Layfield created a misleading impression in the loan application—which also contained other material omissions—by omitting all mention of the extinguished fee-sharing agreements. In calculating the degree of risk involved in

6

the loan, even supposedly extinguished fee-sharing agreements would have been material. Layfield's own acknowledgement that "at the end of the day" his firm would "honor any agreements it had" further suggests the continuing relevance of such fee-sharing agreements.

Accordingly, sufficient evidence supported the jury's verdict that the loan was fraudulently obtained.

2. Finally, Layfield brings four challenges to his conviction for felony tax evasion, 26 U.S.C. § 7201, on count 26. None of these challenges have merit.

The elements of a § 7201 offense are: "(1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Kayser*, 488 F.3d 1070, 1073 (9th Cir. 2007). The crime is complete as soon as the attempt is made, and any affirmative act that indicates a willful attempt to evade the tax satisfies the attempt element. *See Spies v. United States*, 317 U.S. 492, 498-99 (1943). The government charged Layfield with a so-called *Spies* evasion—the failure to file a timely tax return coupled with an affirmative act of evasion—and specified four possible affirmative acts.

First, contrary to Layfield's contention, the district court did not err in formulating the jury instructions. The court's instructions "adequately presented the defendant's theory of the case and . . . presented the jury with every element of the crime." *Unites States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Nor did the

7

district court abuse its discretion by modifying the Ninth Circuit's Model Jury Instructions. *See id.*; *Bearchild v. Cobban*, 947 F.3d 1130, 1148 (9th Cir. 2020). And in so modifying, the court's instruction did not convey to the jury that it could convict based only on the fact that Layfield had filed a late return. *See United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) (holding that "evidence of belated tax payments, made while awaiting prosecution, is irrelevant").

Second, sufficient evidence supported this conviction. Layfield asserts that the government failed to prove any of the four affirmative acts in the indictment. But, contrary to Layfield's argument, even a lawful act can constitute an affirmative act. *See Spies*, 317 U.S. at 499 (defining an affirmative act as "any conduct, the likely effect of which would be to mislead or to conceal"). A rational juror could have found that at least one of the four alleged acts identified by the government constituted evasion or attempted evasion of a tax.

Third, no constructive amendment was effected. By arguing that embezzled income is taxable to the embezzler, the government did not convict Layfield on the basis of uncharged conduct. *See United States v. Ward*, 747 F.3d 1184, 1190 (9th Cir. 2014). The indictment alleged the existence of a tax deficiency but did not limit the theory of the case as to the source or the exact amount of the income in question. *See United States v. Pisello*, 877 F.2d 762, 765-66 (9th Cir. 1989). Moreover, in a § 7201 prosecution, the government need not prove the precise

amount of tax that was evaded, as long as it can establish some deficiency. *Id.* at 765 (upholding § 7201 conviction because "Pisello committed the same offense whether he evaded the tax on $197,000 in income or $227,000 in income").

Fourth, the district court did not abuse its discretion by refusing to conduct a *Daubert* hearing regarding the government's tax expert. *See United States v. Alatorre*, 222 F.3d 1098, 1105 (9th Cir. 2000) (noting that a district court is not required to hold a *Daubert* hearing). There is no indication that the district court failed to assure that the expert's testimony rested on a reliable foundation. Nor did the district court fail to clarify that it—and not the expert—would instruct the jury on the law regarding a § 7201 offense.

Because his four challenges fail, we affirm Layfield's tax evasion conviction on count 26.

**AFFIRMED.**