**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Victor GREGER, Defendant-Appellant.**

**No. 82–1550.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1983.

Decided Sept. 26, 1983.

Certiorari Denied Jan. 23, 1984. See 104 S.Ct. 1002.

John J. Graves, Jr., Graves & Potter, Las Vegas, Nev., Larry Leavitt, Asst. U.S.

---

\* Honorable John W. Peck, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The difference in charges stems from the fact that Greger signed his 1974 and 1976 returns,

Atty., Las Vegas, Nev., for plaintiff-appellee.

John J. Graves, Jr., Graves & Potter, Las Vegas, Nev., for defendant-appellant.

Before BROWNING, PECK \*, and ALARCON, Circuit Judges.

JOHN W. PECK, Circuit Judge:

Appellant Victor Greger was convicted of falsely preparing and assisting in the preparation of federal income tax returns and of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 *et seq.* The indictment charged Greger with willfully and knowingly underreporting his income in federal tax returns covering 1974, 1975, and 1976. Counts I and III of an eight-count indictment charged Greger with falsely preparing his 1974 and 1976 returns in violation of 26 U.S.C. § 7206(1). Count II charged Greger with knowingly supplying false information used in the preparation of his 1975 return.[1] The remaining five counts charged Greger with extortion resulting from his actions as food and beverage director for the Argent Corporation, owner of three fashionable Las Vegas hotels and casinos.

Greger appeals the judgment of conviction under Count II, involving his assistance in the preparation of the 1975 tax return, and the judgment of conviction under each of the five extortion charges. After careful review, we affirm.

In 1973 Greger became food and beverage director for the Argent Corporation, owner and operator of the Stardust, Fremont, and Hacienda Hotels and Casinos. Greger was in charge of selecting and contracting with various suppliers to provide the Stardust Hotel with food and beverage products. Between 1973 and 1976 he con-

but failed to subscribe his 1975 return. The 1975 return was signed by his accountant as preparer, with no knowledge of the information's inaccuracy.

tracted with a number of purveyors. The agreements were frequently accompanied by questionable dealings, however. Before agreeing to purchase foodstuffs and beverages from five purveyors, enumerated at trial, Greger demanded that certain sums be paid to him. Specifically, before agreeing to contract with Schulman Meats and Provisions, Incorporated, Best Sausage Company and Holiday Meats and Provision, he demanded that a percentage of the sale price be paid directly to him. Highland Dairy Company was told to rebate 10% of its sale price to do business with him. Lux Seafoods, Incorporated was required to pay 2% to 3% of its gross sale price as well as various other sums. Each purveyor at first hesitated, but then reluctantly agreed to such terms. Payments were generally made monthly in cash or by specially directed check. Each purveyor was continually aware that failure to make a payment would most likely result in the termination of the lucrative contract with Argent Corporation and that Greger had exclusive power to terminate at any time. Each purveyor testified at trial that the termination of the Argent Corporation account would substantially injure its business.

After a seven-day jury trial Greger was found guilty on all eight counts of the indictment. The district judge sentenced Greger to concurrent terms of eighteen months imprisonment and a fine of $3,000 for each tax conviction and to concurrent terms of four years imprisonment and a fine of $4,000 for each Hobbs Act conviction. The two sentences are to run consecutively.

On appeal, though the question was not raised at trial, Greger initially argues his conviction for falsely assisting in the prepa-ration of his 1975 tax return should be reversed since 26 U.S.C. § 7206(2) does not proscribe such conduct. Greger urges that since this statute is identical in scope to the traditional criminal aider or abettor provision of 18 U.S.C. § 2, it must be similarly construed. Since the only other person involved in the preparation of the return, his accountant, was unaware that information supplied by Greger was false, Greger argues that he could not be convicted of aiding or abetting absent some proof of a principal actor. Greger contends that even though the matter was not raised at trial this court should consider the question plain error and reverse his conviction.

■ The rule is well settled that a reviewing court will not generally consider a matter not first raised in the trial court. *United States v. Larson,* 507 F.2d 385, 387 (9th Cir.1974). Review is possible, however, even absent an objection at trial in the exceptional case where it would appear necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. *United States v. Segna,* 555 F.2d 226, 231 (9th Cir.1977); *Larson, supra; Marshall v. United States,* 409 F.2d 925, 927 (9th Cir.1969). In this case we perceive no such exceptional situation.

■ The language of § 7206(2) is plainly broader in scope than the traditional aider and abettor statute, 18 U.S.C. § 2.[2] It was clearly intended to encompass such cases as the one presented here. *See United States v. Wolfson,* 573 F.2d 216 (5th Cir.1978) (where donor of yachts to university falsely and willfully inflates their value in statements to university's tax preparer, with knowledge that charitable deduction will be taken, donor subject to prosecution

---

**2.** Section 7206(2) provides in pertinent part:

Any person who—

. . . .

(2) *Aid or assistance.* Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud

is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document

. . .

. . . .

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

under § 7206(2)); *United States v. Crum,* 529 F.2d 1380, 1382 (9th Cir.1976) (Section 7206(2) applies to one who supplies false information which he knows will be included in the tax return even if he is not the preparer of a return or the taxpayer); *Strangway v. United States,* 312 F.2d 283 (9th Cir.), *cert. denied,* 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); *United States v. Siegel,* 472 F.Supp. 440, 444 (N.D.Ill.1979) (even where indictment does not name taxpayer or preparer as co-conspirators, defendant may be convicted under § 7206(2) for supplying false information which he knows will be included in tax return).[3] There is therefore no occasion to consider the application of the plain error rule to this case.

Greger contends that the evidence presented at trial was insufficient to show extortion for purposes of the Hobbs Act. Since each purveyor agreed to make the payments to him voluntarily in order to secure the Argent Corporation accounts, Greger argues that such payments constituted at most bribes, not extortion. We disagree.

[4] The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Courts interpreting this language have focused on the intent of the defendant to induce payment through the use of threats or the exploitation of fears in his victim, and the reasonable state of mind of the victim based on his words, actions, and perceptions. *United States v. French,* 628 F.2d 1069 (8th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); *United States v. Duhon,* 565 F.2d 345, 351 (5th Cir.), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *United States v. Brecht,* 540 F.2d 45 (2d Cir.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977). "Fear" in this context has been held to include fear of economic loss. *French, supra* at 1075; *Duhon, supra; United States v. Addonizio,* 451 F.2d 49, 59 (3d Cir.), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *United States v. Furey,* 491 F.Supp. 1048, 1062–63 (E.D.Pa.), *aff'd,* 636 F.2d 1211 (3d Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981). Viewing the evidence in a light most favorable to the government, the jury could reasonably have found extortion. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Rodriguez,* 546 F.2d 302, 306 (9th Cir.1976).

Greger, during negotiations and throughout the period of the contract, demanded that each of the five purveyors of foodstuffs and beverages make periodic payments to him. He was obviously aware that the Argent Corporation account was lucrative and would be anxiously sought. More importantly, once acquired, he had the

---

**3.** The statement in *Cosgrove v. United States,* 224 F.2d 146, 151 (9th Cir.1954), that under 26 U.S.C. § 3793(b), a predecessor of § 7206(2), "the person who is aided [other than the taxpayer] must concur in the 'falsity or fraud,' just as every conspirator must share in the unlawful intent" is *dictum* which we need not and do not follow. *Cosgrove* held that acquittal of a conspiracy charge supported a defense of *res judicata* by a defendant who was later tried for aiding and assisting his alleged co-conspirator in the same way to further the same scheme as the government had sought but failed to prove in the earlier conspiracy trial. The court found that as the issues were actually framed in both cases, and tried in the conspiracy case, existence of the alleged agreement between the two defendants was central to both charges, and the nonexistence of such an agreement therefore was necessarily adjudicated in the conspir-

acy trial. The court held that under the authority of *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), the government was barred from attempting to prove the existence of the same agreement in a second trial charging aiding and assisting. 224 F.2d at 153–55. *Sealfon* and *Cosgrove* both rest on the basic *res judicata* principle that resolution of an issue in a first trial—the lack of an illegal agreement—precludes the consideration of that identical issue in a second trial independent of the overall similarity in the offenses charged at the two trials. *Sealfon,* 332 U.S. at 578, 68 S.Ct. at 239; *Cosgrove,* 224 F.2d at 150. The *Cosgrove* court's remarks that a sharing of criminal purpose by two or more persons was an essential element of the offense under both statutes was obviously unnecessary to the holding.

exclusive power to terminate each of the five contracts, which he knew would have an inescapably adverse impact. Clearly there was sufficient evidence for the jury to conclude reasonably that Greger intended to induce payments from each of the five purveyors enumerated in the indictment, through threats or through fear of economic loss.

We correlatively hold there was sufficient evidence to show each purveyor agreed to make payments, and continued to do so during the term of the contract, due to fear of economic loss if they stopped payments to Greger. Each purveyor testified that serious damage would occur to his business if the Argent Corporation contract was lost, and that Greger, they believed, had the authority to terminate their contract. Given this evidence, the jury could find that payments were made involuntarily as a result of the fear that not to do so could cause Greger to terminate their contract, substantially injuring their business. *United States v. Margiotta*, 688 F.2d 108, 133 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *Brecht, supra; Furey, supra* at 1061–62.

In sum, finding no merit in Greger's contentions, we affirm the judgment of the district court.