IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| COMMONWEALTH OF THE<br>NORTHERN MARIANA ISLANDS,<br> Plaintiff/Appellee, | )<br>)<br>)<br>) | APPEAL NO. 90-026<br>CRIMINAL CASE NO. 88-0124 |
| vs. | )<br>) | OPINION |
| ANTHONY S. PETERS,<br> Defendant/Appellant. | )<br>)<br>)<br>) | |

Argued November 6, 1990

Counsel for Plaintiff/Appellee: James E. Hollman
Assistant Attorney General
Commonwealth of the
 Northern Mariana Islands
Saipan, MP 96950

Counsel for Defendant/Appellant: William M. Fitzgerald
P. O. Box 909
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, BORJA, Justice, and ATALIG,
Special Judge.

BORJA, Justice:

## FACTS

On the night of January 16, 1988, a Police Officer observed a silver sedan being driven at an excessive rate of speed. It was traveling in the center lane of the road. The Officer stopped the vehicle. He observed that the face of the driver, the

468

defendant/appellant, Anthony S. Peters (hereafter Peters), was flushed and his eyes were bloodshot. He also detected a strong odor of alcohol coming from Peters' breath.

Based on the above observations, the Officer asked Peters to perform two field sobriety tests. He failed both the coordination and the balance tests. The Officer then arrested Peters for driving under the influence of alcohol.

He took Peters to the Garapan police sub-station. The Officer asked Peters again to perform a second set of coordination and balance tests. Again, he failed both tests. The Officer informed Peters both of his implied consent sanctions and his constitutional rights, which he waived. Peters' speech was slurred.

A different Police Officer at the sub-station administered the breathalyzer test. Such Officer is a certified operator of the Alcotest 7010 breathalyzer instrument. He tested the instrument to make sure that it was functioning properly. After determining that it was in proper working condition, he administered the test to Peters. The result of the test was that Peters had a .181 alcohol concentration in his breath.[1]

---

[1] 9 CMC § 7105(a)(1) and (2) states that

(a) A person shall not drive, operate or be in actual physical control of any vehicle while:

(1) Having a Blood Alcohol Concentration (BAC) of 0.10 or more as measured by a breath or blood test; or

(2) Under the influence of alcohol. . . .

After Peters was charged with Driving under the Influence of Alcohol in violation of 9 CMC § 7105, he made a pre-trial motion for a jury trial. The trial court denied the motion. A bench trial was held on December 7, 1988. At trial, Peters renewed his motion for a jury trial and it was again denied.

Two witnesses testified on behalf of the CNMI. The CNMI provided no foundational evidence that the breathalyzer machine was properly calibrated before the test was administered to Peters.

The defense did not present any evidence.

Peters was convicted on December 7, 1988. The court concluded that, "the defendant was impaired and that he is guilty of DUI."

## ISSUES PRESENTED

1. Whether a defendant in a criminal proceeding in the Commonwealth has a constitutional right to a jury trial when charged under a statute authorizing a sentence of imprisonment in excess of six months.

2. Whether the trial court erred in admitting the breathalyzer test result into evidence when no objection was made to its admission.

## STANDARD OF REVIEW

The standard of review for the first issue is de novo since it is a question involving the application of the constitution. Carreras v. City of Anaheim, 768 F.2d 1039 (9th Cir. 1985).

With regard to the second issue, the standard of review is the

470

plain error rule. Rule 103, Commonwealth Rules of Evidence, and Rule 52(b), Commonwealth Rules of Criminal Procedure.

## ANALYSIS

Peters argues that the right to a trial by jury is a fundamental right guaranteed to all citizens within the jurisdiction of the United States. He argues that the reasoning in CNMI v. Atalig, 723 F.2d 682 (9th Cir. 1984), cert. denied, 104 S.Ct. 3518 (1984) (a reasoning following the Insular Cases) no longer applies. He contends that its holding that Covenant Section 501 does not violate the Sixth or Fourteenth Amendments to the U.S. Constitution must be reevaluated.[2] He bases his argument on the fact that Atalig was decided when the NMI was still a part of the Trust Territory of the Pacific Islands. Since the NMI has voluntarily joined the American political family through the Covenant, he argues, reliance on the Insular Cases is no longer

---

[2]Covenant Section 501, in pertinent part, states that:

> To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several States: . . . Amendments 1 through 9, inclusive; . . . Amendment 14, Section 1; . . . provided, however, that neither trial by jury nor indictment by grand jury shall be required in any civil action or criminal prosecution based on local law, except where required by local law.

Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, reprinted in CMC at B-101.

valid. He, therefore, concludes that the Sixth Amendment to the U.S. Constitution now applies. Peters argues that the Sixth Amendment applies of its own force and Covenant Section 501 is subordinate to the U.S. Constitution and cannot stand.

Alternatively, he argues that a decision by this Court declaring the right to a jury trial in the Commonwealth in prosecutions involving a possible sentence of one year will not be inconsistent with the Covenant. The Covenant, he contends, allows jury trials where required by local law. He maintains that a decision by this Court on what he advocates would satisfy the local law requirement.

We agree with the government that the constitutionality of Covenant section 501 has been addressed and authoritatively resolved in the Atalig case. Peters has not stated any argument that persuades us to question the Atalig case on this issue. There is no merit to Peters' argument that Atalig has to be reevaluated because there has been a change in political status for the NMI. The Atalig court specifically noted that Covenant Section 501 became effective since January 9, 1978. 723 F.2d at 685. The question of the constitutionality of Covenant Section 501 is the same now as it was in 1978, and in 1984 when Atalig was decided. The fact that the NMI is no longer a trust territory and is now an "undefined entity" within the American political family is a distinction without a difference. We do not see how the distinction would counteract a specific Covenant provision,

especially a provision "without which the accession of the Northern Mariana Islands to the United States would not have been possible." Marianas Political Status Commission, <u>Section by Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands</u> at 48 (1975) (hereafter <u>Covenant Analysis)</u>.

We disagree with Peters on his interpretation of the <u>Atalig</u> case. By adhering to the <u>Atalig</u> case, we do not hold that the territorial clause of the U.S. Constitution applies in the NMI.[3] We need not reach the question of whether the territorial clause applies in the NMI. We merely hold that, in conformity with the <u>Atalig</u> case, Covenant section 501 does not violate the Sixth or Fourteenth Amendments to the U. S. Constitution.

Peters' alternative argument is also without merit. The term "except where required by local law," found in Covenant Section 501(a) does not, and cannot, mean a decision by this Court. It is the NMI legislature that has the authority to make the right to a jury trial the same as in the continental United States. In the analysis to the Covenant, it is specifically stated that the right to a jury trial is "left entirely <u>to the local legislature</u> and the Northern Marianas Constitution." <u>Covenant Analysis</u> at 46 (emphasis

---

[3]The <u>Atalig</u> court specifically stated that "we do not reach the argument that the Constitution applies with even less force in the NMI than in an unincorporated territory." 723 F.2d at 691. "Thus, there is merit to the argument that the NMI is different from areas previously treated as unincorporated territories. We need not decide this issue because the independent force of the Constitution is certainly no greater in the NMI than in an unincorporated territory." <u>Id</u>., n.28.

added). Article I, Section 8 of the NMI Constitution states that "[t]he legislature may provide for trial by jury in criminal or civil cases." (Emphasis added.)

The parties disagree on the type of analysis to be given the second issue regarding the admission of the breathalyzer test result. The government contends that the proper analysis should be the plain error rule since Peters did not object to the admission of the test result.

Peters argues that he need not object to the introduction of such evidence. There is a presumption of his innocence before conviction. It is the government that has the burden of proving beyond a reasonable doubt that he is guilty of the charge against him.

Peters' argument lacks merit. 9 CMC § 7107(a) and (b) provides that

> (a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol or drugs, <u>evidence of the concentration of alcohol or drug in a person's breath at the time alleged, as determined by analysis of the person's breath, shall be admissible</u>.

> (b) <u>Upon the request of the person who submits to the test</u> at the request of a police officer, <u>full information concerning the test shall be made available to him or his attorney</u>.

(Emphases added.) The statute states definitively that the test result is admissible. The statute also states that information about the test is available to the defendant <u>upon request</u>. A

474

reasonable interpretation of this statute is that the result of such test is admissible. A defendant, prior to trial, should request information about the test, e.g., who administered it, the qualifications of the officer administering it, maintenance logbook, etc. This will enable him to question the credibility of the test result. He will not be able to exclude the result as evidence, but he will be able to argue the weight that such result should be given.

Therefore, Rule 103, Commonwealth Rules of Evidence, governs the resolution of the second issue.

Rule 103(a)(1) states that

> Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, *and* . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

(Emphasis added.) To claim error in the admission of evidence one has to meet a two-prong test that is conjunctive. The first part of the test is to determine if a substantial right of the party is affected. The second part requires that a timely objection or motion to strike be made. Since Peters did not make any objection, one of the two requirements is not met and he cannot claim error.

The only exception to the above rule is the plain error rule, pronounced in Evidence Rule 103(d), and Criminal Rule 52(b). Evidence Rule 103(d) states that, "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although

475

they were not brought to the attention of the court." Criminal Rule 52(b) states that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

A reversal under the plain error rule "is appropriate only when necessary to safeguard the integrity and reputation of the judicial process or to forestall a miscarriage of justice. "United States v. Lancelloti, 761 F.2d 1363, 1367 (9th Cir. 1985) (citations omitted). See also United States v. Greger, 716 F.2d 1275 (9th Cir. 1983).

A reversal under the plain error rule is proper only when two. factors exist:

1. Substantial rights of the defendant are affected; and

2. It is necessary to safeguard the integrity and reputation of the judicial process, or to forestall a miscarriage of justice.

Neither of the two elements is present. No substantial right of Peters is affected. The integrity and reputation of the judicial process are not at stake, and there has been no miscarriage of justice. The reason none of these elements has been met is simply because the finding of guilt was not based solely on the result of the breathalyzer test. Other evidence existed that supported the conviction. There is uncontradicted testimony that Peters' face was flushed and his eyes were bloodshot. His speech was slurred.

476

A strong odor of alcohol was smelled. Finally, he failed certain field sobriety tests twice. These facts are sufficient to support a conviction of driving under the influence of alcohol. See CNMI v. Kawai, No. 89-011, Order Denying Petition for Rehearing (N.M.I. 1990).

## CONCLUSION

The judgment of the trial court is AFFIRMED.

Jose S. Dela Cruz
Chief Justice

Jesus C. Borja
Associate Justice

Pedro M. Atalig
Special Judge