15 F.3d 1087
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 MORI POINT DEVELOPMENT, INC., a California corporation, and
National Investors Financial, Inc., a California
corporation, Plaintiffs-Appellants,
v.
CITY OF PACIFICA, a political subdivision of the State of
California; City Council of Pacifica; Giny Silva Jaquith,
Jon Galehouse, John Schneider and Michael Vasey, as
individuals and as members of the City Council, Defendants-Appellees.
 No. 92-15768.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1993.
Decided Dec. 28, 1993.
 
 1
 Before CANBY AND NOONAN, Circuit Judges and HUFF,* District Judge.
 
 
 2
 MEMORANDUM**
 
 INTRODUCTION
 
 3
 Appellants Mori Point Development, Inc. and National Investors Financial, Inc. appeal the district court's dismissal of their complaint based on a finding that the action was not ripe. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 BACKGROUND
 
 4
 The appellants bring this action against the City of Pacifica, the City Council of Pacifica, and the individual members of the City Council (collectively "City"). The appellants allege a violation of their substantive and procedural due process rights and a denial of their right to equal protection. The appellants are attempting to develop coastal property in the City of Pacifica, known as "Mori Point." The project initially included plans for a conference center, a commercial center, residential units, and two restaurants. Portions of the area sought to be developed by the appellants is the habitat of the endangered San Francisco Garter Snake.
 
 
 5
 The attempted development of the area includes the following history. In 1982, residents of the City approved a growth control initiative which required city-wide approval to rezone land zoned as "agricultural." At that time, most of the property in Mori Point was zoned agricultural. In 1984, the appellants' predecessor submitted a ballot proposition ("Measure C") to rezone the property to "Planned Development" and sought approval of a Development Plan for the project. The classification of "Planned Development" is a special classification in which allowable uses are limited to those set forth in the Development Plan. The Development Plan submitted along with Measure C also set forth the specific locations where the particular uses could be built. Measure C provided that the property could not be rezoned from the Planned Development designation without approval of the City's voters.
 
 
 6
 Voters approved the rezoning and the Development Plan. In November 1984, the City Council of Pacifica adopted an ordinance which rezoned the property and approved the Development Plan.
 
 
 7
 In August 1986, the appellants' predecessor applied to the City for approval of a specific plan, tentative map, variance, General Plan amendment, and Local Coastal Land Use Plan ("LCLUP") amendment. In December 1986, the City circulated for comments a Draft Environmental Impact Report regarding the project. During 1987 and 1988, the City Planning Commission held four public hearings on the anticipated land uses of the project and the environmental approvals for the project.
 
 
 8
 In March 1988, the City Planning Commission approved the specific plan, tentative map, variance, General Plan amendment, and LCLUP amendment. The Planning Commission also adopted findings for the certification of the Final Environmental Impact Report. In connection with the approval, the City imposed numerous conditions on the development of the property. These conditions include specifications for the protection of the San Francisco Garter Snake, provision of public beach access, fire and police protection, the hours of operation for heavy machinery, and numerous other conditions.
 
 
 9
 The appellants' predecessor appealed certain of the conditions to the City Council. Various citizens' groups also appealed the approval of the project. After holding hearings, the City Council denied the appeals, with the exception of the citizens' appeals concerning the proposed residential units as the units related to the protection of the San Francisco Garter Snake. Consequently, in July 1988, the City Council certified the Final Environmental Impact Report; approved the amendment to the General Plan, the tentative map, and the specific plan; and approved the variance as to all aspects of the project, with the exception of the residential proposal. The City Council also recommended to the California Coastal Commission approval of an amendment to the LCLUP. The tentative map and variance approvals were to be valid for two years, until approximately July 1990.
 
 
 10
 Following this approval, a citizens' group filed suit in state court, challenging the City Council's approval of the Development Plan. This action raised issues regarding the compliance of the project with the California Environmental Quality Act.
 
 
 11
 In May 1990, the appellants requested a one-year extension of the permits for the tentative map and variance. In July 1990, the Planning Commission denied the request for an extension, and the appellants appealed the denial to the City Council. The City Council disapproved the Commission's denial and granted the appellants a one-year extension, until approximately July 1991.
 
 
 12
 In April 1991, the appellants sought a stay of the running of the one-year extension for the tentative map and variance. The appellants sought a stay for the duration for the citizens' lawsuit. The Planning Commission denied the request for the stay, and the appellants again appealed to the City Council. In June 1991, the City Council also denied the request for the stay. Consequently, on June 25, 1991, the appellants sought a one-year extension for the tentative map and variance. The application was automatically granted until the earliest of sixty days or a decision on the request. After holding a public hearing, the Planning Commission denied the request for an extension. The appellants again appealed to the City Council.
 
 
 13
 On August 12, 1991, the City Council denied the request. In support of its denial, the City Council stated, "The City Council finds that the subdivision and variance as currently designed are likely to cause substantial environmental damage and substantially and avoidably injury to wildlife or its habitat." Supplemental Excerpt of Record ("SER") at 2. As an additional "separate and independent ground for denial," the City Council found the appellants had failed to make sufficient progress on the project, contrary to assurances that significant progress would be made. Id. at 3.
 
 
 14
 Following the City Council's denial of an extension, in November 1991, the appellants filed an inverse condemnation action in state court. On December 30, 1991, the appellants filed this action in federal district court. In July 1992, the state court dismissed the action without prejudice, finding the action was unripe. The state court action, however, is still pending in a petition for writ of mandate. On April 3, 1992, the district court granted the appellees' motion to dismiss, also finding the action was unripe. The appellants then filed a timely notice of appeal to this court.
 
 DISCUSSION
 
 15
 The appellants raise several arguments on appeal. First, the appellants argue the action fits within the futility exception to the ripeness doctrine. The appellants next argue the district court erred by dismissing the action without affording the appellants an opportunity for oral argument, an evidentiary hearing, or discovery.
 
 A. RIPENESS ISSUE
 
 16
 We review de novo a district court's finding regarding ripeness. Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1453 n. 4 (9th Cir.1987), cert. denied, 484 U.S. 1043 (1988). The party invoking federal jurisdiction has the burden to demonstrate the court's jurisdiction. Data Disc, Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1285 (9th Cir.1977). Because the district court relied only on the pleadings and did not hold an evidentiary hearing, the appellants need only present a prima facie showing of jurisdiction. Id. When an action involves disputed facts relating to jurisdiction and the court declines to hold an evidentiary hearing to resolve the jurisdictional issue, the court must view the pleadings in the light most favorable to the plaintiff and must resolve all doubts in the plaintiff's favor. Metropolitan Life Ins. v. Neaves, 912 F.2d 1062, 1064 n. 1 (9th Cir.1990).[1]
 
 
 17
 To establish their claims are ripe for review, the appellants must allege facts that would demonstrate the City has made "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348 (1986). To satisfy the final determination requirement, the appellants "may need to resubmit modified development proposals that satisfy the local government's objections to the development as initially proposed." Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1501 (9th Cir.1990). The claims are not ripe if the appellants abandoned their application and did not "bring their proposal before a decisionmaking body with broad authority to grant different forms of relief or to make policy decisions which might abate the alleged taking." Southern Pacific v. City of Los Angeles, 922 F.2d 498, 503 (9th Cir.1990), cert. denied, 112 S.Ct. 382 (1991). If the appellants forego opportunities which could provide similar relief, the claims are not ripe for review. Id.
 
 
 18
 The appellants concede they have not obtained a final determination as to the extent of development the City will permit on the property. The appellants have not submitted a modified application to the City for approval of a tentative map and variance. The appellants, however, argue the futility exception to the ripeness doctrine applies.
 
 
 19
 The Ninth Circuit recognizes a "limited" futility exception to the ripeness doctrine. Del Monte Dunes, 920 F.2d at 1501. To fall within this exception, the appellants have the burden to present facts demonstrating it would be futile to attempt to obtain a "final determination." Id. This exception is intended "to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved." Southern Pacific, 922 F.2d at 504.
 
 
 20
 The court concludes the facts alleged by the appellants do not show that reapplication to the City would be futile. The appellants argue the City's "hostile attitude" and past conduct in relation to their project demonstrates that a reapplication to the City for approval of a modified tentative map and variance would be futile. The appellants' conclusive and unsupported allegations relating to the City's intent are not sufficient to satisfy their burden. Herrington v. County of Sonoma, 857 F.2d 567, 570 (9th Cir.1988), cert. denied, 489 U.S. 1090 (1989); St. Clair v. City of Chico, 880 F.2d 199, 203-04 (9th Cir.), cert. denied, 493 U.S. 993 (1989).
 
 
 21
 The documents submitted by the parties indicate the City is merely requiring additional information in order to determine whether revisions to the project or mitigation measures are necessary. Contrary to the appellants' argument, the appellants have not alleged facts showing that it is the City's probable intent to prohibit all development of the area or that the City is hostile. It appears the City was initially acting under the impression that the development, in particular the conference center, would not adversely affect the endangered snake. SER at 2. After the City approved the first extension in 1990, the City obtained additional information from the Department of Fish and Game and the United States Fish and Wildlife Service that the conference center would result in a "take" or complete destruction of the endangered species. Id. at 2-3. Consequently, in its findings for denial of the extension, the City stated that further environmental impact information is necessary before the City grants additional extensions or approvals so that the City can analyze the information and determine if revisions are necessary and, if so, the extent of those revisions. Id. at 3.
 
 
 22
 In its findings denying the appellants' request for an extension, the City states, "the subdivision and variance as currently designed are likely to cause substantial environmental damage and substantially and avoidably injure wildlife or its habitat." Id. at 2. The City further states that:
 
 
 23
 [L]etters from the Department of Fish & Game indicate that a Sec. 2081 agreement would be required to allow the incidental take of the San Francisco Garter Snake. The U.S. Fish & Wildlife Service concurred and consequently required that a 10(a) permit be obtained prior to approving the conference center and access road. These agencies concluded that the new information results in the need for additional mitigation and for conditions of approval to be amended.
 
 
 24
 The City then opines "the new information may require the road to be reconfigured or realigned, and different construction approaches to be evaluated such as elevated sections to address current migration patterns." Id. The City concludes it agrees with the agencies' suggestion that additional mitigation measures are necessary and "finds that mitigation measures not previously considered in the EIR could substantially lessen these effects on the [snake]." Id. Thus, the facts alleged by the appellants indicate the City would like to consider further information before proceeding with the project. The documents, however, do not support the conclusion the City is hostile towards the appellants or is attempting to reserve the property as an open space.
 
 
 25
 Further, the City's past conduct, as set forth in the complaint, does not evidence a desire to retain the property as open space. In 1988, the City initially approved the amendment to the General Plan, the tentative map, the specific plan, and approved the variance as to all aspects of the project, with the exception of the residential proposal. The City also approved the appellants' first request for an extension in 1990. The approval for the specific plan, development plan, and zoning remain in effect. The City's denial of a request for a second extension, based on the need to review additional information, does not support the conclusion the City is hostile.
 
 
 26
 At oral argument before this panel, the appellants also argued the City's request for further environmental studies, particularly a 10(a) permit, is disingenuous. The appellants argued they were already required to provide the environmental information relating to a 10(a) permit under the original conditions imposed on the project. Condition 1(a) of the July 25, 1988 conditions provides that, following certain studies of the snake, "if snakes are in the area which will be disturbed by construction, the Fish and Wildlife Service shall determine if a 10(a) permit will be needed prior to construction or if the snakes should be collected and maintained under the direction of the Fish and Wildlife Service." Excerpt of Record ("ER") at 69. Thus, the appellants argued they contemplated performing the requested environmental studies.
 
 
 27
 The court concludes the appellants' argument is without merit. Letters from independent agencies informed the City the original conditions were not sufficient. A letter from the Department of Fish and Game states:
 
 
 28
 Review of the City's conditions of project approval dated July 25, 1988, indicates that they should be modified to provide for the permanent protection of snake habitat onsite as part of the conference center project. They should also be modified to recognize the need for a management agreement with the Department to allow the incidental take of [the snake], which is otherwise prohibited.
 
 
 29
 SER at 82-83. The United States Fish and Wildlife Service also wrote a letter to the City which states:
 
 
 30
 The new information discussed in the [Fish and Game] Department's letter regarding San Francisco garter snake habitat use in the project area substantiates the likelihood of a take associated with the proposed construction of an access road to the conference center. Any take of listed species requires a Federal permit pursuant to section 10(a) of the Endangered Species Act of 1973, as amended.
 
 
 31
 The Service, therefore, recommends that the City revise its conditions of approval for the project to require the issuance of a take permit from the Service as a prerequisite to approval of the project by the City.
 
 
 32
 Thus, two independent agencies advised the City that the original conditions were not adequate. Again, the documents submitted do not support the appellants' legal conclusion that the City is hostile. Instead, the documents indicate the City is responding to the suggestions of independent agencies to perform supplemental environmental studies before proceeding with the project. The appellants also have not provided any documentation that they have performed the contemplated environmental studies or the supplemental studies requested by the City. Accordingly, the facts presented do not support the appellants' argument that the City's request for additional environmental studies is disingenuous.
 
 
 33
 Finally, the appellants argue they cannot revise the project consistent with Measure C. Measure C expressly provides:
 
 
 34
 Appropriate conditions and revisions to the project, including reductions in density, intensity of use, and height, may be added by the Planning Commission to further the purposes of state and local regulations. Conditions may revise the project as necessary to ensure a safe and compatible project.
 
 
 35
 ER at 23-24. The court cannot analyze whether the necessary revisions will fall within this provision in Measure C, precisely because the court does not know what revisions, if any, will be necessary to satisfy the City that the environmental impact will be minimized. This uncertainty is further support for the district court's finding that the action is not ripe. Accordingly, under the facts as pleaded by the appellants, the court concludes the appellants have failed to present a prima facie showing of jurisdiction and, therefore, the court concludes the action is not ripe for review.[2]
 
 B. YOUNGER ABSTENTION
 
 36
 As an alternative, the court concludes the doctrine of Younger abstention applies. Under this alternative, dismissal of the complaint was appropriate.
 
 
 37
 Abstention pursuant to Younger promotes the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 432, 431 (1982). Abstention is appropriate if the following three factors are satisfied: "(1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions." Fresh Int'l Corp. v. Agricultural Labor Relations Bd., 805 F.2d 1353, 1357-58 (9th Cir.1986).
 
 
 38
 Although raised by the City, the district court did not address Younger abstention because the court found the action was not ripe. Nevertheless, we conclude Younger abstention is an appropriate alternative basis for dismissal.
 
 
 39
 First, the state proceedings are ongoing and the appellants instituted the state action prior to filing this action in federal court. Thus, the first factor is satisfied. See Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 560 (9th Cir.1993). The proceedings also implicate important state interests. The actions involve the procedures established by a local government to determine the appropriate extent of development within its borders. The actions also implicate the comprehensive environmental schemes established by the State of California. Before this court will intervene, the City should have the opportunity to determine the acceptable extent of development on Mori Point. A federal court should intervene only after the City has made this decision. Finally, the appellants can and have raised the federal issues in the state proceedings. Accordingly, as an alternative, the court concludes Younger abstention is appropriate.
 
 C. ORAL ARGUMENT
 
 40
 The appellants next argue the district court erred by not affording the appellants an opportunity for oral argument on the appellees' motion to dismiss. The court concludes the district court did not abuse its discretion by declining to hold oral argument.
 
 
 41
 Northern District Local Rule 220-1 provides discretion to the district court to rule on a motion to dismiss without oral argument. Local Rule 220-1 provides all motions "may be determined, in the judge's discretion ... without oral argument.... The motion to dismiss in this action was not complex and had been briefed by the parties. The appellants have not presented facts which demonstrate the district court abused its discretion in relying on the briefing. In fact, this court also has declined to permit oral argument. Accordingly, the court rejects this argument.
 
 D. EVIDENTIARY HEARING AND DISCOVERY
 
 42
 The appellants also argue the district court erred by not permitting an evidentiary hearing or discovery. The court also concludes this argument is without merit.
 
 
 43
 The appellants did request an opportunity to orally present the arguments raised in their opposition papers. The appellants, however, did not request an opportunity for an evidentiary hearing. This hearing would have permitted the appellants to present evidence and testimony in support of their argument that the action is ripe. An evidentiary hearing is not limited to the presentation of oral arguments. Contrary to the appellants' argument, an evidentiary hearing is distinct from oral argument. The appellants also did not request an opportunity for discovery.
 
 
 44
 This court normally will not consider arguments raised for the first time on appeal. In re Wind Power Sys., 841 F.2d 288, 290 n. 1 (9th Cir.1988). The court, however, will consider the new issues under limited circumstances. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). The court will consider the issue if "necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." United States v. Greger, 716 F.2d 1275, 1277 (9th Cir.1983), cert. denied, 465 U.S. 1007 (1984). Another exception is "when the issue is purely one of law and either does not depend on the factual record developed below or the relevant record has been fully developed." Reyes-Alvarado, 963 F.2d at 1189.
 
 
 45
 The court concludes the issues of whether the appellants were entitled to an evidentiary hearing or discovery do not come within the exceptions. The court need not consider the issues to prevent a miscarriage of justice. It would be inefficient for this court to determine when discovery is necessary, and the extent of permissible discovery, when the party has not presented the issue to the court most familiar with the intricacies of the case. Further, allowing a party to request an evidentiary hearing for the first time on appeal, would invite error. The issues involved also are not purely legal issues. The issues depend upon an application of the legal standards to the unique facts of this case. The court, therefore, declines to review these issues.
 
 
 46
 The appellants, however, also argue the district court, on its own motion, should have held an evidentiary hearing and permitted discovery. The court also rejects this argument.
 
 
 47
 An evidentiary hearing is appropriate if the district court relies on documents beyond the pleadings and genuine issues of fact are raised. Data Disc, 557 F.2d at 1285. In this case, no genuine issues of fact were raised. The appellants' legal conclusion that the City is hostile to their plan and, thus, the action is ripe is not sufficient to establish a genuine issue of fact. The court "need not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.' " Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981)). This argument also amounts to a new argument on appeal that the district court abused its discretion.
 
 
 48
 Similarly, the district court was not obligated sua sponte to permit discovery. The appellants have not adequately explained why they failed to request discovery before the district court or why they had not conducted sufficient discovery when the issue of ripeness was raised and resolved in the state court action. See St. Clair, 880 F.2d at 201-02. Thus, the district court did not err.
 
 E. LEAVE TO AMEND COMPLAINT
 
 49
 Finally, the appellants argue the district court erred by dismissing their complaint without leave to amend. The court concludes this argument is without merit.
 
 
 50
 A district court normally should permit leave to amend unless it is clear that an amendment would not cure the jurisdictional deficiency. Polich v. Burlington Northern, 942 F.2d 1467, 1472 (9th Cir.1991). After a de novo review of the record, the court concludes an amendment would not cure the ripeness problem. The appellants must exhaust the administrative remedies available to them before proceeding to court. The district court dismissed the action without prejudice. If the action becomes ripe, the appellants then may file an action without prejudice. A finding that the court is without jurisdiction does not preclude the appellants from bringing suit when the action is ripe. See St. Clair, 880 F.2d at 202. Accordingly, the court rejects the appellants' argument.
 
 
 51
 AFFIRMED.
 
 NOONAN, Circuit Judge, concurring:
 
 52
 I concur in the disposition on the ground of the Younger abstention.
 
 
 
 *
 The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 [1]
 The appellants argue the district court applied the wrong standard of review in dismissing their complaint. Specifically, the appellants argue the jurisdictional and substantive issues are "intertwined" and, thus, the summary judgment standard is appropriate. Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983). The court concludes the issues are not intertwined. The determination of the jurisdictional issue involves whether a reapplication would be futile after the acquisition of additional environmental information. The substantive issues will involve whether City has acted arbitrarily by requiring additional information and denying a request for an extension and the extent to which the City will allow development on the property. Although related, the issues are not so intertwined that a determination on the jurisdictional issue necessarily resolves the substantive issues
 
 
 [2]
 In its findings denying the appellants' request for an extension, the City states it also rejected the request based on the appellants' lack of progress on the project. In this appeal, however, the appellants do not argue that this justification renders reapplication futile. The appellants do not present argument that the City would not reconsider the application if the appellants demonstrated, to the city's satisfaction, that significant progress will be made on the project. Accordingly, the court will not address this issue