64 F.3d 660
 76 A.F.T.R.2d 95-6099
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William H. DEAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
POTOMAC SYSTEMS ENGINEERING, INCORPORATED, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William H. DEAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
POTOMAC SYSTEMS ENGINEERING, INCORPORATED, Defendant-Appellant.
 Nos. 95-5185, 95-5186, 95-5202, 95-5203.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1995.
Decided Aug. 18, 1995.
 
 ARGUED: John G. Kester, WILLIAMS & CONNOLLY, Washington, DC, for Appellants. John Joseph Klein, Assistant United States Attorney, Alexandria, VA, for Appellee. ON BRIEF: Terrence O'Donnell, Paul B. Gaffney, Tae-Sik Yoon, WILLIAMS & CONNOLLY, Washington, DC, for Appellants. Helen F. Fahey, United States Attorney, David G. Barger, Assistant United States Attorney, Alexandria, VA, for Appellee.
 Before RUSSELL, NIEMEYER, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted William Dean for assisting the preparation and presentation of his corporation's and his own false tax returns, in vio lation of 26 U.S.C. Sec. 7206(2). The corporation was convicted for subscribing to false tax returns, in violation of 26 U.S.C. Sec. 7206(1). Dean and his corporation appeal. We affirm his convictions but remand for resentencing.
 
 I.
 
 2
 William Dean lived in Maryland and maintained a residence in Alabama. He was the chairman, president, and 85 percent owner of a Virginia-based company, Potomac Systems Engineering, Incorporated (PSE). For four years, 1986 through 1989, Dean "skimmed" hundreds of thousands of dollars from PSE in the following ways. First, he submitted check request forms which falsely indicated that he was seeking an advance for either travel or business deductions. Second, he submitted falsified expense vouchers and receipts for various types of entertainment he had purportedly paid for in cash. Third, he had a substantial number of PSE checks ($500 each) drawn to the Crystal City Marriott, where he had check cashing privileges for up to $500. He regularly took the checks there and cashed them. Fourth, he had PSE checks drawn to various PSE employees, who in turn cashed the checks and returned the cash to him. All of this activity (with the exception of the cashing of the checks) took place at PSE headquarters in the Eastern District of Virginia. The money Dean skimmed was falsely charged to a PSE "selling expense" (business development) account, which recorded advances to Dean for cash expenses related to the development of PSE contracts with the Department of Defense.
 
 
 3
 Dean had an independent accountant in Alabama prepare his individual tax returns (IRS Form 1040). Dean did not report on his returns for tax years 1986, 1987, 1988 and 1989 the amount of money he skimmed from PSE, and he failed to tell his accountant that his adjusted gross income was understated. In addition, as a result of Dean's scheme, PSE's tax returns (IRS Form 1120) for tax years 1987, 1988 and 1989 had inflated selling expenses.
 
 
 4
 In September 1994 Dean and PSE were charged in a nine-count indictment in the Eastern District of Virginia for violating 26 U.S.C. Secs. 7206(1) & (2). Counts One through Four charged Dean with aiding and assisting the preparation of his false personal income tax returns for tax years 1986 through 1989, in violation of Sec. 7206(2). Counts Five through Seven charged Dean with aiding and assisting the preparation of PSE's false corporate returns for tax years 1987 through 1989, in violation of Sec. 7206(2). Counts Eight and Nine charged PSE with subscribing to false corporate tax returns from 1989 through 1990 (specifically, for overstating selling expense deductions), in violation of Sec. 7206(1).
 
 
 5
 Dean and PSE had a jury trial in December 1994. The jury convicted them on all counts. Dean's sentencing took place in February 1995. The district court used the 1989 edition of the Guidelines Manual because of ex post facto concerns. The court set Dean's base offense level at 12 because the tax loss fell between $70,000 and $120,000. The court then enhanced by two levels pursuant to Sec. 3B1.1 for "abuse of position of trust." For each of Counts Two through Seven, Dean was sentenced to concurrent terms of 15 months, the lowest term in his guideline range. The court imposed the same concurrent term (15 months) for Count One, a pre-Guidelines conviction. In addition, the court fined Dean $28,180.80 and ordered him to pay to the IRS $81,508 in restitution, due immediately. PSE was placed on probation for six months, fined $50,000 and ordered to pay $74,562 in restitution.
 
 
 6
 Dean appeals his convictions and sentence. PSE appeals only the restitution order.
 
 II.
 A.
 
 7
 Counts One through Four charged Dean under Sec. 7206(2) for his involvement in the preparation and presentation of his fraudulent tax returns. Dean says the prosecution of these four counts was improper for the following reasons.
 
 
 8
 First, Dean contends that he should have been prosecuted under subsection (1) of section 7206 (subscribing to a false return), not subsection (2), because, he says, subsection (2) cannot reach one who assisted the preparation or presentation of his own false return. We disagree. The text of subsection (2) is quite broad and reaches Dean's scheme. It reaches, for example, anyone who "[w]illfully ... procures ... the preparation or presentation ... of a [false] return ..., whether or not such falsity ... is with the knowledge or consent of the person authorized or required to present such return...."[1]
 
 
 9
 Second, Dean argues that venue for these four counts was not proper in the Eastern District of Virginia. He says venue was proper only in Alabama because his tax returns were prepared there by his accountant and mailed from Alabama to the IRS in Tennessee or Georgia. But in rejecting a venue challenge in United States v. Hirschfeld, 964 F.2d 318, 321 (4th Cir.1992), we said that the taxpayer-defendant there "read[ ] Sec. 7206(2) too narrowly in focusing only on where the return was prepared, mailed, and filed." Here, Dean did more than earn income in the Eastern District of Virginia. While there he engaged in various acts to keep the IRS in the dark about the true extent of his income from PSE. These acts assisted the presentation of his false returns. Thus, we conclude that venue was proper in the Eastern District of Virginia.[2] Moreover, by virtue of his actions in the Eastern District of Virginia, Dean's misconduct involved more than mere "omission," and therefore we need not address Dean's alternative argument that Sec. 7206(2) does not reach omissions.
 
 B.
 
 10
 Counts One through Seven charged that Dean "did willfully aid and assist, and procure, counsel and advise" the preparation and presentation of false and fraudulent tax returns, in violation of Sec. 7206(2). This charge mirrored the text of Sec. 7206(2). Without objection by Dean, the district court instructed the jury that it could convict if it found that Dean "aided, assisted in, procured, counselled, advised, or caused the preparation and presentation of a [false] return...." JA 603-04 (emphasis added).[3] The "or caused" language was not in the indictment and is not in the statute. Dean complains that the verb "cause" is broader than the other five verbs in the statute (aid, assist, advise, counsel and procure). He argues that the addition of the verb "cause" was a constructive amendment of the indictment and, consequently, amounted to plain error under our recent en banc decision in United States v. Floresca, 38 F.3d 706 (4th Cir.1994) (en banc) (holding that "constructive amendments of a federal indictment are error per se, and ... must be corrected on appeal even when not preserved by objection").
 
 
 11
 A constructive amendment occurs when the possible bases for conviction are broadened beyond those appearing in the indictment. Id. at 710. The issue here is whether the district court's instruction so modified the essential elements of the offense charged that there is a substantial likelihood Dean was convicted for an offense other than that charged. For the reasons that follow, we do not think there was a constructive amendment (or plain error, for that matter).
 
 
 12
 First, there might very well be situations where one may cause someone to do something without aiding or assisting him. For example, a jury perhaps could find that X caused Y to do something, but did not aid or assist Y, (1) when X did not have the purpose or intent to bring about the result of Y's conduct or (2) when Y was an innocent party. But Sec. 7206(2) expressly requires that X act "willfully" and does not require that Y be culpable. Accordingly, the district court below instructed the jury that Dean must have acted willfully[4] and that it did not matter whether his accountant knew about the false income.
 
 
 13
 Second, the verb "cause" is essentially synonymous with the verb "procure," which is included within the statute. Black's Law Dictionary 1208 (6th ed.1990) defines "procure" as follows:
 
 
 14
 To initiate a proceeding; to cause a thing to be done; to instigate; to contrive, bring about, effect, or cause. To persuade, induce, prevail upon, or cause a person to do something.... Procure connotes action and means to cause, acquire, gain, get, obtain, bring about, cause to be done....
 
 
 15
 Indeed, it appears that the verb "procure" is broader than the verb "cause."
 
 
 16
 In the final analysis, then, the district court's addition of the verb "cause" did not broaden the bases of conviction, and therefore there was no constructive amendment. Nor was there plain error. See United States v. Cohen, 617 F.2d 56, 58 (4th Cir.1980) (per curiam).
 
 
 17
 It is perhaps telling that some appellate courts have inadvertently included the word "cause" when paraphrasing Sec. 7206(2). See United States v. Dahlstrom, 713 F.2d 1423, 1426 (9th Cir.1983) ("to convict a person under Section 7206(2), the government must prove ... defendants aided, assisted, procured, counseled, advised or caused the preparation and presentation of a false return"); United States v. Perez, 565 F.2d 1227, 1233-34 (2d Cir.1977) ("Government had to prove ... that Perez aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return").
 
 III.
 A.
 
 18
 Dean raises several challenges to his sentence.
 
 1.
 
 19
 At Dean's sentencing, the district court accepted the government's position that Dean's unreported income totalled $291,000. The court increased Dean's base offense level accordingly pursuant to U.S.S.G. Sec. 2T4.1. Dean says the court's tax loss figure was erroneous because, he says, the government failed to demonstrate by a preponderance of the evidence that his unreported income totalled $291,000.
 
 
 20
 The offense level of a defendant convicted under Sec. 7206(2) is based on the "tax loss" to the government.[5] U.S.S.G. Secs. 2T1.4, 2T4.1. "Tax loss" is defined as "the amount by which the greater of gross income and taxable income was understated," multiplied by 28% for individuals and 35% for corporations. U.S.S.G. Sec. 2T1.3. The probation office found that Dean had a total unreported income in the amount of $291,100 during the three years covered by Counts Two through Four: $69,900 for 1987; $122,300 for 1988; and $98,900 for 1989. The probation office observed that "[n]one of the reported 'selling expenses' could be substantiated by [Dean] as legitimate," JA 696, and therefore treated them as illegitimate. In determining Dean's base offense level the probation office did not include the unreported income relating to Count One (tax year 1986), which the probation office calculated to be $39,335, because that was a pre-Guidelines count. In addition, to avoid double counting, the probation office ignored the tax loss relating to Counts Five through Seven (PSE's returns), which the probation office calculated to be $95,534. Thus, the probation office came up with a total tax loss of $81,508 ($291,000 in unreported income multiplied by 28%). Under the 1989 edition of the Guidelines Manual, a tax loss between $70,000 and $120,000 yielded a base offense level of 12, see U.S.S.G. Sec. 2T4.1, which is what the probation office recommended.[6] At sentencing, the court asked Dean's lawyer whether he could get the total tax loss below $70,000, and his lawyer responded that he did not know and that he did not have a figure.
 
 
 21
 Dean says the district court's finding of a total tax loss of at least $70,000 was clearly erroneous because the government "failed to prove what portion of the payments received by [him] exceeded his expenditures or what he was owed." Brief of Appellants at 38. But the district court explained in its order denying Dean's motion for bond pending appeal that "[t]he government presented sufficient evidence at trial to support the $70,000 calculation." See United States v. Pellerito, 918 F.2d 999, 1002 (1st Cir.1990) ("The sentencing judge has a right to use the evidence presented at trial in determining the sentence to be imposed."). The trial evidence supported the district court's finding that the monies Dean received from PSE and the associated selling expenses claimed by PSE were not legitimate. Consequently, the government satisfied its burden at sentencing of demonstrating by a preponderance of the evidence a tax loss of at least $70,000. The district court did not shift the burden to Dean at sentencing simply by asking him whether he could get the figure below $70,000. At that point the government had already satisfied its burden.
 
 2.
 
 22
 Dean also challenges the district court's restitution order. The court ordered that Dean pay to the IRS $81,508 in restitution, due immediately. By making restitution due "immediately," it appears that the court did not order restitution pursuant to 18 U.S.C. Secs. 3583(d) and 3563(b)(3) as a condition of Dean's supervised release. Rather, as the government has conceded in its brief on appeal, the court must have ordered restitution pursuant to 18 U.S.C. Sec. 3663. Section 3663, however, does not authorize restitution for violations of Title 26 of the United States Code (the Internal Revenue Code).[7] Therefore, the restitution order for Dean was without statutory authorization. See United States v. Stout, 32 F.3d 901, 905 (5th Cir.1994). We remand for resentencing so that the district court may consider fully the issue of restitution as a condition of Dean's supervised release.
 
 3.
 
 23
 The government appears to concede that, because Dean did not have a trust relationship with the IRS, the victim here, the district court erred in giving Dean a two-level abuse-of-a-position-of-trust enhancement pursuant to U.S.S.G. Sec. 3B1.3. See United States v. Moore, 29 F.3d 175, 179-80 (4th Cir.1994) (noting that "the question of whether an individual occupies a position of trust should be addressed from the perspective of the victim" (internal quotations omitted)). Without that enhancement, Dean's sentencing range drops from 15-21 months (Level 14, Criminal History I) to 10-16 months (Level 12, Criminal History I). The government points out that the district court, in response to Dean's Fed.R.Crim.P. 35(c) motion, recognized that the enhancement may have been in error, and the court said it would have given Dean the same sentence under the lower guideline range. Nevertheless, on remand the district court should formally reconsider Dean's sentence using the lower guideline range.
 
 B.
 
 24
 The district court ordered PSE to pay to the IRS $74,562 in restitution. PSE challenges that figure, complaining the court failed to make a formal determination of the actual loss suffered by the IRS. PSE has a compelling argument here, for it appears that the IRS did not incur a loss as a result of PSE's inflated selling expenses. This is because if, as the government claims, the inflated selling expenses were really compensation to Dean, then that compensation would still be properly deductible by PSE. Indeed, the government previously conceded to us (in an appeal from a pretrial order of the district court) that "[t]he tax returns of PSE, while false as to material matters, might not have resulted in reduced taxes for PSE; whether corporate cash expenditures are characterized as 'selling' or 'salary' expenses, they still would be deductible for purposes of computing the corporation's taxable income." Moreover, PSE points out that even if none of the deductions would have been allowed, it could have carried forward large net-operating losses to offset that income. Thus, we vacate the restitution order relating to PSE and remand to the district court to make a formal determination of the actual loss, if any, to the IRS caused by PSE's inflated selling expenses.
 
 IV.
 
 25
 We have considered all other arguments raised, and we find them to be without merit. We affirm the convictions and remand for resentencing.
 
 
 26
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART
 
 
 
 [1]
 See United States v. Greger, 716 F.2d 1275 (9th Cir.1983) (taxpayer prosecuted under Sec. 7206(2) for assisting the preparation of his false return), cert. denied, 465 U.S. 1007 (1984)
 
 
 [2]
 Dean takes the position that if he had created bogus documents in the Eastern District of Virginia and had given them to his tax preparer to attach to his Form 1040 (e.g., false itemized deductions), then venue would properly lie in the Eastern District of Virginia. However, he says that is not his case. But we do not accept Dean's distinction. Dean's acts in the Eastern District of Virginia were part of an effort to conceal his income, income which could have showed up on, for example, a W-2 form but for Dean's actions. Dean would respond that had he decided to report to the IRS the money he skimmed, that money would not have shown up on a W-2 because it did not involve payment for services. But Dean misses the point. Had he desired more compensation from PSE and played by the rules, his increased compensation would not have come by way of random travel and entertainment vouchers or random checks drawn to the Marriott or PSE employees. Rather, such compensation probably would have come in the form of a higher salary or bonus or some other form of remuneration that likely would have been documented in one way or another
 
 
 [3]
 Elsewhere the court correctly instructed the jury without the word "cause."
 
 
 [4]
 The district court instructed the jury as follows:
 It must be established that the defendant's act must be willful. The word willful as used in the statute means a voluntary, intentional violation of a known legal duty. In other words, the defendant must have acted voluntarily and intentionally with the the [sic] specific intent to do something which the law forbids, that is to say, for the purpose to either disobey or disregard the law. The defendant's conduct is not willful if he acted through negligence, inadvertence, justifiable excuse, mistake, or due to the good faith misunderstanding of the requirements of the law. (JA 606)
 We note, too, that the Sentencing Guidelines base relevant conduct on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant...." U.S.S.G. Sec. 1B1.3(a)(1)(A) (emphasis added).
 
 
 [5]
 As noted above, Dean was sentenced under the 1989 edition of the Guidelines Manual
 
 
 [6]
 Under the current edition of the Guidelines Manual, that range yields a base offense level of 14
 
 
 [7]
 18 U.S.C. Sec. 3663(a)(1) says, "The court, when sentencing a defendant convicted of an offense under this title or [various sections of title 49], may order ... that the defendant make restitution to any victim of such offense."